IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

PAMELA DIANE STARK,                )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        No. 19-2396-JTF-tmp
                                   )
CITY OF MEMPHIS, et al.,           )
                                   )
        Defendants.                )
                                   )

---

### REPORT AND RECOMMENDATION
---

Before the court is a Motion to Dismiss brought by defendants Amy P. Weirich and Raymond J. Lepone under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (ECF No. 39.) For the following reasons, it is recommended that the motion be granted.

### I.    PROPOSED FINDINGS OF FACT

Pamela Stark filed this complaint *pro se* on June 19, 2019. (Compl., ECF No. 1.) The complaint alleges several causes of action against sixteen defendants, fourteen named and two named as John

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

Does. The following findings of fact are based on the well-pleaded allegations in the complaint.[2]

In June 2018, Pamela Stark was an Assistant District Attorney with the Office of the District Attorney General for the Thirtieth Judicial District of Tennessee. (Id. at 6 ¶ 22.) Amy Weirich is the District Attorney General for the Thirtieth Judicial District of Tennessee. (Id. at 4 ¶ 12.) Raymond Lepone is a Deputy District Attorney General for the Thirtieth Judicial District of Tennessee and was Ms. Stark's supervisor. (Id. at 4, 7 ¶¶ 13, 28.) Pamela

---

[2]Weirich and Lepone urge the court to consider a sworn statement by Lepone and certain attached exhibits in deciding this motion to dismiss. (ECF No. 39.) The undersigned declines to do so. In resolving a Rule 12(b)(1) motion to dismiss, a federal court may consider materials outside the pleadings if the defendants raise a factual attack on the court's subject-matter jurisdiction. Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014). In such circumstances, the court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists[.]" Id. In contrast, a federal court deciding a Rule 12(b)(6) motion to dismiss generally cannot look beyond the pleadings. Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 487 (6th Cir. 2009). Here, Weirich and Lepone have moved to dismiss under both Rule 12(b)(1) and Rule 12(b)(6). The materials beyond the pleadings that Weirich and Lepone have submitted appear to be relevant only to their argument that prosecutorial immunity bars Ms. Stark's suit. But prosecutorial immunity is a ground for dismissal under Rule 12(b)(6), not Rule 12(b)(1). See Imbler v. Pachtman, 424 U.S. 409, 416 (1976). The undersigned thus cannot consider materials beyond the pleadings in evaluating Weirich and Lepone's prosecutorial immunity argument. To the extent the materials are intended to be relevant to the sovereign immunity defense, the court need not look beyond the pleadings to resolve that issue.

Stark is married to Joe Stark, a sergeant in the Memphis Police Department ("MPD"). (Id. at 6 ¶ 23.)

On June 17, 2018, Mr. Stark allegedly assaulted Ms. Stark in her home. (Id. at 6 ¶¶ 24-25.) To prevent Ms. Stark from filing charges against him, on June 25, 2019, Mr. Stark contacted another MPD officer and had the officer file a police report about the incident as a "memo." (Id. at 6-7 ¶¶ 25-26.) The MPD has a policy of not investigating police reports filed as memos. (Id. at 7 ¶ 27.) However, the next day, the MPD's reporting system rejected the memo because Tennessee state law prohibits the MPD from designating reports of domestic violence as memos. (Id. at 7 ¶ 30.) As a result, an MPD officer filed a report listing Mr. Stark as the victim of June 17 assault and Ms. Stark as a suspect. (Id. at 7-8 ¶¶ 31, 36.) Ms. Stark filed for divorce shortly thereafter. (Id. at 10 ¶ 46.)

On June 25 and 27, 2018, a senior MPD officer and an MPD domestic violence investigator met with Ms. Stark's supervisor at the District Attorney's office. (Id. at 7 ¶¶ 28, 32.) At these meetings, the officers asked Lepone to encourage Ms. Stark to not report the June 17 assault. (Id.) After the meeting with the MPD domestic violence investigator, Lepone contacted the MPD's chief to tell him to remove the investigator from the inquiry into the June 17 assault. (Id.) On June 28, 2018, Lepone summoned Ms. Stark to his office for what was described as a "wellness check." (Id.

at 7-8 ¶ 33.) Ms. Stark alleges that the wellness check was meant
to encourage her to not report the June 17 assault and to inform
her that the District Attorney's office had recused itself from
involvement with matters related to the assault. (Id.)

In August 2018, the District Attorney General for the Twenty-
Eighth Judicial District was assigned to handle any proceedings
arising out of the June 17 assault. (Id. at 9 ¶ 39.) At the
direction of both Lepone and Weirich, Ms. Stark met with a
prosecutor from the Twenty-Eighth Judicial District to discuss
Stark's concerns regarding the MPD investigation. (Id. at 9 ¶¶ 40-
42.) After learning at that meeting that Mr. Stark was still being
considered a possible victim of the June 17 assault, Ms. Stark
decided to break off any further contact with the prosecutor
assigned to her case to avoid the appearance of impropriety since
she was still an employee of another District Attorney General's
office. (Id. at 9 ¶ 42.) Ms. Stark informed Lepone of her decision
and he agreed. (Id.)

On December 14, 2018, Ms. Stark criticized the MPD's handling
of the investigation of the June 17 assault on Facebook. (Id. at
11 ¶ 52.) The next day, members of the MPD contacted Lepone to
express concerns about Ms. Stark's Facebook post. (Id. at 11 ¶
53.) Ms. Stark also reached out to Lepone that day to request that
the District Attorney's office contact an "outside agency" to
investigate the MPD's handling of the investigation into the June

17 assault. (Id. at 9 ¶ 43.) Lepone ignored Ms. Stark's request for an outside agency investigation and "began a pattern of harassing and intimidating communications" with Ms. Stark to convince her to remove the Facebook post and drop the allegations against her husband. (Id. at 9, 11 ¶¶ 43, 53.) Dissatisfied, Ms. Stark wrote a letter to City of Memphis Mayor Jim Strickland to request an investigation. (Id. at 10 ¶ 45.) Mayor Strickland forwarded the letter from Ms. Stark to Weirich's office. (Id. at 10 ¶ 46.) A month later, Ms. Stark asked Lepone to request a prosecutor pro tem to investigate her claims of police misconduct. (Id. at 10 ¶ 44.) Lepone ignored this request. (Id.) On February 8, 2019, Lepone summoned Ms. Stark to his office where Ms. Stark alleges that he "harassed and intimidated" her to get Ms. Stark to drop her allegations against Mr. Stark and the MPD. (Id. at 13 ¶ 61.)

While Ms. Stark sought an investigation into the MPD's handling of the June 17 assault, Mr. Stark filed a motion in his state court divorce proceedings to enjoin Ms. Stark from publicly criticizing him or the MPD while the divorce was pending. (Id. at 11 ¶ 55.) This motion was granted. (Id. at 12, 13 ¶¶ 60, 62.) After the state court enjoined Ms. Stark, the MPD banned Ms. Stark from police property, and two MPD officers refused to testify in a suppression hearing in a murder case she was handling. (Id. at 13-14 ¶¶ 65-67.) Ms. Stark took the view that the state court

injunction prohibited her from telling Lepone about the MPD's efforts to disrupt her cases and that she could not ethically continue to serve as a prosecutor if the MPD continued to disrupt her cases. (Id. at 14 ¶¶ 68-69.) Ms. Stark thus resigned from her position. (Id. at 14 ¶ 70.)

Ms. Stark brings claims against Weirich and Lepone based on 42 U.S.C. § 1983 and § 1985, the Tennessee Constitution, and the tort of intentional infliction of emotional distress. In support of her § 1983 claims, Ms. Stark alleges Weirich and Lepone violated her federal constitutional free speech, equal protection, and substantive and procedural due process rights. Ms. Stark also alleges that Weirich is liable for constitutional violations committed by other defendants based on her supervisory liability, failure to train, and failure to intervene. In support of her § 1985 claims, Ms. Stark alleges that Weirich and Lepone conspired with various people to deprive her of the same federal constitutional rights.[3] Ms. Stark seeks money damages, injunctive relief "prohibiting Defendant's [sic] from listing Plaintiff as a suspect in a domestic violence assault in conjunction with the

---

[3]Precisely whom Weirich and Lepone are alleged to have conspired with is unclear from the complaint. Weirich and Lepone are accused by name of conspiracy in paragraphs 80, 81, 87, 89, 98, 101, and 102 of the complaint, and could be read as part of the group of unspecified defendants who are accused of conspiracy in paragraphs 1 and 99. In these paragraphs, different combinations of people are accused of being part of this conspiracy.

events of June 17, 2018," and injunctive relief "restraining and prohibiting Defendant's [sic] from continuing or enforcing the Restraining Order entered by Judge Weiss against Plaintiff."

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

Weirich and Lepone bring their motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 553 (6th Cir. 2012). A challenge to this court's subject-matter jurisdiction can come in two forms. A facial attack accepts the material allegations of the complaint as true but insists nonetheless that the court lacks subject-matter jurisdiction to hear the case. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). A factual attack claims that the court lacks subject-matter jurisdiction regardless of what the plaintiff has pleaded and requires the trial court to weigh the evidence before it in determining whether that is the case. Id.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court views Ms. Stark's allegations in the light most favorable to her and accepts all well-pleaded factual allegations as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Federal Rule of Civil Procedure

8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556 U.S. at 677). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). To satisfy this requirement, a plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (alteration omitted) (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## B. Injunctive Relief

Weirich and Lepone have moved to dismiss Ms. Stark's claims for injunctive relief based on the Rooker-Feldman doctrine. However, the court need not address this argument because Ms. Stark has conceded her official capacity claims against Weirich and

Lepone and she cannot bring claims for injunctive relief against those defendants in their individual capacities.

When a plaintiff concedes in briefing that the plaintiff is not bringing a particular claim, the court "should take it at its word." NicSand, Inc. v. 3M Co., 507 F.3d 442, 458 (6th Cir. 2007); Johnson v. CoreCivic, Inc., No. 18-1051-STA-egb, 2018 WL 5798534, at *3 (W.D. Tenn. Nov. 5, 2018). In her brief, Ms. Stark states "it is clear that these defendants [Weirich and Lepone] are being sued in their individual capacity. . . . Plaintiff does not assert that either Defendant Weirich [or] Defendant Lepone . . . is being sued in their official capacity." (ECF No. 41.) Because Ms. Stark has unequivocally stated she is not bringing claims against Weirich and Lepone in their official capacities, she has conceded all such claims.

Ms. Stark's concession of official capacity claims against Weirich and Lepone necessarily means she cannot bring any claim for injunctive relief against them in their individual capacities. "Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.,* his official capacity." Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Ctys., 150 F. App'x 389, 401 (6th Cir. 2005). The

appropriate way of determining whether an injunction relates only to an official's job is to ask if the injunction would continue to be of use to the plaintiff if the official were no longer in office. Id. Neither of the injunctions Ms. Stark seeks in this suit would be useful if Weirich and Lepone were private citizens. Because Ms. Stark is not suing Weirich and Leopone in their official capacities, she cannot seek any injunctive relief against them.[4] It is recommended that the motion to dismiss be granted as to Ms. Stark's injunctive relief claims against Weirich and Lepone.

## C.    The Domestic Relations Exception

Weirich and Lepone next argue that the court lacks jurisdiction over this case because it falls within the domestic relations exception to federal jurisdiction. The domestic relations exception to federal jurisdiction "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree[.]" Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992). If a plaintiff does not seek one of those three prohibited remedies, the domestic relations exception does not apply. See Chevalier v. Estate of Barnhart, 803 F.3d 789, 798 (6th Cir. 2015). Ms. Stark is not demanding that this court grant a divorce, award alimony or another form of support, or determine child custody.

---

[4]The same logic bars injunctive relief based on Ms. Stark's state law claims. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984).

Consequently, her claims are not barred by the domestic relations exception. It is recommended that Weirich and Lepone's motion to dismiss on this ground be denied.

**D.    Sovereign Immunity**

Weirich and Lepone argue that the claims against them are barred by the doctrine of sovereign immunity. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment prohibits citizens from suing their own states in federal court. Virginia Office for Protection & Advocacy v. Stewart, 131 S. Ct. 1632, 1638 (2011). A suit against an individual in his or her official capacity is a suit against the state itself. Boler v. Earley, 865 F.3d 391, 410 (6th Cir. 2017). However, sovereign immunity does not bar suits against state officials in their individual capacities. Lewis v. Clarke, 137 S. Ct. 1285, 1291 (2017).

As discussed above, Ms. Stark is suing Weirich and Lepone in their individual capacities, not their official capacities. Sovereign immunity does not bar individual capacity suits. It is recommended that the motion to dismiss on this ground be denied.

**E.    Younger Abstention**

Weirich and Lepone next argue that the court should decline to exercise jurisdiction in this case under the abstention doctrine established in Younger v. Harris. 401 U.S. 37, 44 (1971). Younger abstention obliges courts to refrain from hearing certain cases when parallel state and federal litigation would be unduly disruptive. New Orleans Pub. Serv., Inc. ("NOPSI") v. Council of City of New Orleans, 491 U.S. 350, 367 (1989). The three types of proceedings that may be protected by the Younger doctrine are (1) ongoing state criminal prosecutions, (2) civil enforcement proceedings that are akin to criminal prosecutions, and (3) civil proceedings involving orders that are uniquely in furtherance of the state courts' ability to perform judicial functions. NOPSI, 491 U.S. at 367-368; see also Aaron v. O'Connor, 914 F.3d 1010, 1016-1021 (6th Cir. 2019). None of these categories are implicated in any way by Ms. Stark's claims against Weirich and Lepone. It is recommended that the motion to dismiss on this ground be denied.

**F.    Prosecutorial Immunity**

Weirich and Lepone contend that the claims against them are barred by the doctrine of prosecutorial immunity. Prosecutors enjoy absolute immunity from suit under federal civil rights law for conduct "intimately associated with the judicial phase of the criminal process[.]" Imbler v. Pachtman, 424 U.S. 409, 430 (1976); Red Zone 12 LLC v. City of Columbus, 758 F. App'x 508, 513 (6th Cir. 2019). However, a prosecutor's conduct outside of the judicial

- 12 -

phase of the criminal process, including conduct as an investigator
or administrator, is not protected by prosecutorial immunity. Van
de Kamp v. Goldstein, 555 U.S. 335, 342 (2009). "'The analytical
key to prosecutorial immunity' is 'whether the actions in question
are those of an advocate.'" Red Zone, 758 F. App'x at 514 (internal
alteration omitted) (quoting Holloway v. Brush, 220 F.3d 767, 775
(6th Cir. 2000)). Actions such as "'giving legal advice to police,'
making 'out-of-court statements' at a press conference, making
statements 'in an affidavit supporting an application for an arrest
warrant,' and 'authorizing warrantless wiretaps in the interest of
national security,'" are not performed in a prosecutor's role as
an advocate and are thus not protected by prosecutorial immunity.
Koubriti v. Convertino, 593 F.3d 459, 467 (6th Cir. 2010) (internal
citations omitted). In contrast, a prosecutor's decision to bring
or not bring charges against a particular person, or a prosecutor's
courtroom advocacy and litigation tactics over the course of a
prosecution, is protected by prosecutorial immunity. Id. at 467.

Much of Ms. Stark's complaint alleges conduct that is clearly
not protected by prosecutorial immunity. Weirich and Lepone are
alleged to have harassed Ms. Stark to get her to stop speaking out
about the MPD and her husband's purported wrongdoing and to have
joined a conspiracy to do the same. That conduct is entirely
outside of courtroom advocacy or prosecution decisions. Likewise,
Weirich and Lepone are not entitled to prosecutorial immunity for,

- 13 -

as Ms. Stark puts it in her brief, "depriv[ing] Plaintiff access
to the protection of Tennessee domestic violence laws (access to
a prosecutor) and access to governmental redress for allegations
of official misconduct by MPD." (ECF No. 41.) Though not a model
of clarity, it appears that Ms. Stark's objection to Weirich and
Lepone's conduct is not based on their choice to recuse themselves
from the investigation or to not bring charges against Mr. Stark.
Rather, it appears that Ms. Stark is arguing that her
constitutional rights were violated because (1) she was listed as
a suspect in the MPD's investigation and was thus told by Lepone
that she could not ethically communicate with the District
Attorney's office that was assigned to handle the investigation
into the June 17 assault, and (2) because Weirich and Lepone did
not appoint a prosecutor *pro tem* or request the assistance of an
outside investigatory agency to handle her claims of misconduct.
Both actions are fundamentally administrative. The first involves
Lepone's actions as Ms. Stark's supervisor, not his capacity as a
courtroom advocate or his power to decide whether or not to
initiate criminal charges. The second is admittedly a closer call,
but appears to be a decision not about whether criminal charges
should or should not be brought, but rather about which entity
should be tasked with handling the decision to bring or not bring
charges. The choice is analogous to a decision by a supervisor in
a prosecutor's office that a particular prosecutor should be

- 14 -

assigned to a case as opposed to another prosecutor. Prosecutorial immunity does not bar Ms. Stark's claims here. It is recommended that the motion to dismiss on this ground be denied.

## G. Conspiracy Allegations

Weirich and Lepone next argue that Ms. Stark has not plausibly alleged a conspiracy under § 1983 or § 1985. "To successfully plead a § 1983 conspiracy, a plaintiff must allege sufficient facts to state a claim that '(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed.'" Arsan v. Keller, No. 18-3858, 2019 WL 3494330, at *10 (6th Cir. Aug. 1, 2019) (quoting Revis v. Meldrum, 489 F.3d 273, 290 (6th Cir. 2007)). Failure to allege a single plan or agreement is fatal to a § 1983 conspiracy claim. Id. "Although circumstantial evidence may prove a conspiracy, 'it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 563 (6th Cir. 2011) (quoting Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003)). These pleading requirements are "relatively strict." Fieger v. Cox, 524 F.3d 770, 776 (6th Cir. 2008).

Ms. Stark has not plausibly alleged the existence of a conspiracy. Ms. Stark has not pleaded that any set of defendants

including Weirich and Lepone shared a single plan to deprive her
of constitutional rights. The closest Ms. Stark comes to alleging
facts that might give rise to such an inference is in the
interactions between the John Doe defendants and Lepone. But the
mere fact that some defendants may have spoken to each other does
not itself give rise to a plausible inference of a conspiracy. See
Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 564 (6th Cir.
2011). Furthermore, the alleged interactions between the other
defendants and Weirich and Lepone do not suggest that Weirich and
Lepone were members of a conspiracy even if one existed. For
example, an MPD investigator is alleged to have met with Lepone to
discourage Lepone from bringing charges against Mr. Stark. The
complaint alleges Lepone then told the MPD's chief to remove that
investigator from the inquiry into the June 17 assault. These
allegations, if anything, suggest Lepone was not conspiring with
the co-defendants. Similarly, Ms. Stark alleges that she was
prevented from telling Weirich and Lepone about the MPD's
interference with her cases because of the restraining order
various conspirators obtained against her. It does not make sense
for Weirich and Lepone to be part of a conspiracy to conceal things
from themselves. Ms. Stark has not plausibly alleged a § 1983
conspiracy.

        This leaves Ms. Stark's § 1985 claims. "A § 1985(3) cause of
action for conspiracy requires that the plaintiff prove four

elements: (1) the existence of a conspiracy; (2) the purpose of the conspiracy was to deprive any person or class of persons the equal protection or equal privileges and immunities of the law; (3) an act in furtherance of the conspiracy; and (4) injury or deprivation of a federally protected right." Royal Oak Entm't, LLC v. City of Royal Oak, Michigan, 205 F. App'x 389, 399 (6th Cir. 2006). Furthermore, to prove a § 1985 conspiracy, a plaintiff must plausibly allege that the conspiracy was motivated by animus against a particular constitutionally protected class. Volunteer Med. Clinic, Inc. v. Operation Rescue, 948 F.2d 218, 224 (6th Cir. 1991). Classes that are entitled to § 1985 protection are those "'discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." Id.

Ms. Stark argues that she has met the animus requirement because the conspiracy against her was motivated by animus against her personally, and class of one claims are cognizable under the Equal Protection Clause. Although class of one claims are sometimes cognizable under the Equal Protection Clause, see Warren v. City of Athens, Ohio, 411 F.3d 697, 710 (6th Cir. 2005), a class of one is not the kind of group that receives "special protection" under the Equal Protection Clause. Volunteer Med. Clinic, 948 F.2d at 224. For this reason, the Sixth Circuit has rejected the notion a plaintiff may plead a § 1985's conspiracy by alleging animus

against the plaintiff as a class of one. <u>Royal Oak</u>, 205 F. App'x
at 399. It is recommended that the motion to dismiss be granted as
to Ms. Stark's § 1983 and § 1985 conspiracy claims.

**H.    § 1983**

Weirich and Lepone contend that Ms. Stark has not plausibly
stated a claim under § 1983 based on their individual conduct. To
state a viable individual claim under 42 U.S.C. § 1983, a plaintiff
"must satisfy two elements: 1) the deprivation of a right secured
by the Constitution or laws of the United States and 2) the
deprivation was caused by a person acting under color of state
law." <u>Tahfs v. Proctor</u>, 316 F.3d 584, 590 (6th Cir. 2003) (quoting
<u>Ellison v. Garbarino</u>, 48 F.3d 192, 194 (6th Cir. 1995)). Ms. Stark
claims she has alleged deprivations of her rights under four
provisions of the Constitution: (1) the substantive component of
the Fourteenth Amendment's Due Process Clause, (2) the procedural
component of the Fourteenth Amendment's Due Process Clause, (3)
the First Amendment, as incorporated to the states through the
Fourteenth Amendment's Due Process Clause, and (4) the Fourteenth
Amendment's Equal Protection Clause.

1.    <u>Substantive Due Process</u>

Under the Fourteenth Amendment to the United States
Constitution, "[n]o State shall . . . deprive any person of life,
liberty, or property, without due process of law." U.S. Const.
amend. XIV, § 1. The clause has both substantive and procedural

components. EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012). The substantive component of the Due Process Clause establishes that certain state governmental deprivations of "'life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" Range v. Douglas, 763 F.3d 573, 588 (6th Cir. 2014) (quoting Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir. 1992)).

Substantive due process protects "a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" Id. (quoting Bell v. Ohio State Univ., 351 F.3d 240, 249–50 (6th Cir. 2003)). "[T]he list of fundamental interests is short and includes: the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment." Langston v. Charter Twp. of Redford, 623 F. App'x 749, 759 (6th Cir. 2015) (citing Washington v. Glucksberg, 521 U.S. 702, 720 (1997)). Absent certain exceptional circumstances, "the Due Process Clause does not require the State to provide its citizens with particular protective services[.]" DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989); see also Zuniga v. Cooper, No.

- 19 -

14-CV-2870-JDT-tmp, 2015 WL 6440766, at *6 (W.D. Tenn. Sept. 17, 2015), report and recommendation adopted, 2015 WL 6440836 (W.D. Tenn. Oct. 21, 2015).

Ms. Stark has not identified a fundamental interest protected by substantive due process. To the extent that she is claiming there is a federal substantive due process right to "access to redress under domestic violence law" that Weirich or Lepone may have violated, she fails to state a claim because the Due Process Clause does not require states to provide affirmative protective services to its citizens. DeShaney, 489 U.S. at 196.

However, even absent the deprivation of a fundamental right, substantive due process is violated by government action that "shocks the conscience." Range, 763 F.3d at 588. This is a demanding standard. "When the conduct in question has been taken by an executive officer, the action violates substantive due process only if it can be characterized as 'arbitrary, or conscience shocking, in a constitutional sense.'" Handy-Clay v. City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)) (citation and internal quotation marks omitted). "Moreover, this characterization applies to only the most egregious official conduct, conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." Id. at 547-48 (internal citations and quotations omitted). "The

- 20 -

conscience-shocking limit on substantive due process claims serves to keep the doctrine from expanding to cover administrative incompetence or irresponsibility." Brown v. Detroit Pub. Sch. Cmty. Dist., 763 F. App'x 497, 504 (6th Cir. 2019) (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 848 (1998)).

Here, Weirich and Lepone's alleged conduct simply does not meet the shocks-the-conscience standard. While it is irresponsible and inappropriate to ignore complaints of police misconduct or to discourage someone from speaking out about such misconduct that is not the kind of egregiously wrong behavior that violates the right to be free of government action that shocks the conscience under governing precedent. Ms. Stark has not plausibly stated a substantive due process violation by Weirich or Lepone.

### 2. Procedural Due Process

"[T]he Due Process Clause provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures." Chandler v. Vill. of Chagrin Falls, 296 F. App'x 463, 468 (6th Cir. 2008) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). To state a procedural due process claim, Ms. Stark must plausibly allege that: (1) she has a property interest protected by the Due Process Clause; (2) she was deprived of this property interest; and (3) the state did not afford her adequate pre-

deprivation procedural rights. Id. at 469 (citing Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999)).

Whether Ms. Stark has alleged a protected property interest is the first issue here. Some historical context illuminates the dispute. Fifty years ago, the Supreme Court recognized "[m]uch of the existing wealth in this country takes the form of rights that do not fall within traditional common-law concepts of property." Goldberg v. Kelly, 397 U.S. 254, 263 n.8 (1970). Then, as now, things like professional licenses, Social Security benefits, and other forms of entitlements were an important part of the property owned by most Americans. Id. Because of the importance of such non-traditional property rights, the Court has acknowledged that the denial of certain government-given benefits or rights may only take place after a constitutionally adequate process. Id. at 271.

This expansion of the scope of the Due Process Clause is limited. It extends only to those interests that are closely analogous to property – those interests one has a "legitimate claim of entitlement to[.]" Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Whether one has a sufficient claim of entitlement to a particular interest is determined by the body of law that creates the right, typically state law. See Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005).

Rights supposedly granted to victims by the criminal law do not fit comfortably into this framework. While state statutes

sometimes describe police obligations in mandatory terms, common sense dictates that law enforcement must have at least some discretion in how to allocate its limited resources. Castle Rock, 545 U.S. at 761 (citing Chicago v. Morales, 527 U.S. 41, 62). Furthermore, it is not clear that the right to have the police enforce or not enforce the criminal law against someone else, even if created by a state statute, can ever be fairly described as being analogous to property. Id. at 766. Courts have thus been skeptical of procedural due process claims by victims based on state criminal law.

The Supreme Court's decision in Castle Rock illustrates how deep that skepticism runs. In Castle Rock, the Colorado legislature passed a law requiring that police officers "shall use every reasonable means to enforce a restraining order." Id. at 759 (quoting Colo. Rev. Stat. § 18-6-803.5(3)). A mother obtained a restraining order against her abusive husband forbidding him from coming within 100 feet of her children. Id. 750-751. The husband violated the order and kidnapped the children from the mother's home. Id. at 753. Over the next ten hours, the mother pleaded with the police repeatedly to search for her kidnapped children, fearing for their safety. Id. at 753-54. The mother even went so far as to show the police a physical copy of the court's restraining order. Id. The police did nothing and the husband murdered the children. Id. at 754. The mother sued, alleging a procedural due process

claim. Id. The Supreme Court held that, assuming without deciding that there could ever be a procedural due process property right in the enforcement of the criminal law (and the Court expressed doubt about that), the mother needed to show a clear statement in state law that demonstrated the existence of an enforceable right. Id. at 758-68. The Court decided that the Colorado legislature's instruction that the police "shall use every reasonable means to enforce a restraining order" was not a clear statement that the police had an obligation to enforce restraining orders. Id. Applying Castle Rock, the Sixth Circuit has held that Tennessee's domestic violence law on restraining orders does not create any obligations on law enforcement that are enforceable by victims through the Due Process Clause. Hudson v. Hudson, 475 F.3d 741, 746 (6th Cir. 2007).

Ms. Stark argues that she was denied the right to "an outside investigatory agency or access to a prosecutor as guaranteed under Tennessee domestic violence laws." (ECF No. 41.) This appears to be a reference to T.C.A. § 36-3-619(g), which provides in relevant part that:

> When a law enforcement officer responds to a domestic
> abuse call, the officer shall: . . . Give the victim
> notice of the legal rights available by giving the victim
> a copy of the following statement:
> IF YOU ARE THE VICTIM OF DOMESTIC ABUSE, you have the
> following rights:
> 1. You may file a criminal complaint with the district
> attorney general (D.A.).

2. You may request a protection order. A protection order may include the following:
(A) An order preventing the abuser from committing further domestic abuse against you;
(B) An order requiring the abuser to leave your household;
(C) An order preventing the abuser from harassing you or contacting you for any reason;
(D) An order giving you or the other parent custody of or visitation with your minor child or children;
(E) An order requiring the abuser to pay money to support you and the minor children if the abuser has a legal obligation to do so; and
(F) An order preventing the abuser from stalking you.
The area crisis line is _____
The following domestic abuse shelter/programs are available to you:_____

T.C.A. § 36-3-619(g). As an initial matter, this statutory language is focused on what a police officer is supposed to do in responding to "a domestic violence call." Ms. Stark did not make a domestic violence call after she was assaulted and is not complaining that the police failed to give her a copy of this form. Rather, Ms. Stark appears to be asking the court to draw the inference that the Tennessee legislature intended to create enforceable legal obligations on the state. However, the statutory language falls well short of the standard set forth in <u>Castle Rock</u>.

Beyond this, it is also not clear how Ms. Stark believes her purported right to "file a criminal complaint with the district attorney general" was violated by Weirich and Lepone. The complaint does not allege that Ms. Stark was ever prevented from filing a criminal complaint with the District Attorney's office. Ms. Stark has not plausibly stated a procedural due process claim.

3.    <u>First Amendment</u>

The First Amendment protects the right to be free from retaliation from the government for one's expressive conduct. <u>Hill v. Lappin</u>, 630 F.3d 468, 473 (6th Cir. 2010). To establish a First Amendment retaliation claim, a plaintiff must show that (1) plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. <u>Buddenberg v. Weisdack</u>, 939 F.3d 732, 739 (6th Cir. 2019).

Ms. Stark alleges that Lepone retaliated against her for what she claims is protected speech – her Facebook post and complaints about MPD wrongdoing – by engaging in "a pattern of harassing and intimidating communications[.]" (ECF No. 1 at 9, 11 ¶¶ 43, 53.) This allegation is not specific enough to plausibly allege that Lepone took an adverse action against Ms. Stark for engaging in protected speech. <u>Cf.</u> <u>Boxill v. O'Grady</u>, 935 F.3d 510, 520 (6th Cir. 2019) (employee's allegation that supervisor was "hostile and intimidating to her personally" was conclusory); <u>White v. Coventry Health & Life Ins. Co.</u>, 680 F. App'x 410, 415 (6th Cir. 2017) (employee's allegations that "almost from the very beginning of her employment she suffered from harassment, discrimination,

intimidation, berating and a hostile work environment," that she
was "constantly berated" and "degraded and humiliated" by her
supervisors were conclusory). To state a claim for constitutional
damages, Ms. Stark needs to allege facts supporting her claims
"with particularity." Heyne v. Metro. Nashville Pub. Sch., 655
F.3d 556, 564 (6th Cir. 2011). She has not done so here.

Ms. Stark argues that her complaint's allegation that Lepone
harassed her is not conclusory because she is not bringing a
harassment claim, and thus she is not simply reciting the elements
of her cause of action. But the plaintiffs in Boxill and White
were also not just reciting the elements of their cause of action
– a hostile work environment claim does not require an allegation
that a supervisor intimidate a subordinate, as the Boxill plaintiff
claimed, or that a supervisor "constantly berate[]" their
subordinate, as the White plaintiff claimed. The problem with the
allegations in those complaints was that they were so general that
the court could not tell what the plaintiff was alleging. Likewise,
Ms. Stark's allegations do not plausibly state a First Amendment
retaliation claim.

4.   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment
provides that "[n]o State shall . . . deny to any person within
its jurisdiction the equal protection of the laws." U.S. Const.,
amend. XIV, § 1. "To state an equal protection claim, a plaintiff

must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" Ctr. For Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) (quoting Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich., 470 F.3d 286, 299 (6th Cir. 2006)).

Ms. Stark claims that she has alleged a class of one equal protection claim. "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." Warren v. City of Athens, Ohio, 411 F.3d 697, 710 (6th Cir. 2005). Such claims are cognizable because "'the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (quoting Sioux City Bridge Co. v. Dakota Cty., Neb., 260 U.S. 441, 445 (1923)). A class of one plaintiff may demonstrate the absence of a rational basis in one of two ways: (1) by "negating every conceivable basis which might support the government action" challenged or (2) "by showing that the challenged action was

motivated by animus or ill-will." Cahoo v. SAS Analytics Inc., 912
F.3d 887, 905 (6th Cir. 2019) (quoting TriHealth, Inc. v. Bd. of
Comm'rs, Hamilton Cty., Ohio, 430 F.3d 783, 788 (6th Cir. 2005)).

Ms. Stark has not plausibly alleged that any similarly
situated comparators were treated differently than her. "[E]ven a
class-of-one plaintiff must show differential treatment by
comparison to others who are treated more favorably." Ryan v. City
of Detroit, No. 11-CV-10900, 2013 WL 6730051, at *5 (E.D. Mich.
Dec. 19, 2013). Furthermore, "[c]lass-of-one plaintiffs must show
*an extremely high degree of similarity* between themselves and the
persons to whom they compare themselves." JDC Mgmt., LLC v. Reich,
644 F. Supp. 2d 905, 926 (W.D. Mich. 2009) (emphasis original)
(quoting Smith v. Defendant A, 2009 WL 1514590, *4 (S.D.N.Y. May
29, 2009)). Ms. Stark has only generally claimed that other victims
of domestic violence were treated differently than her, which alone
is insufficient to state a class of one claim. Given that there
are a variety of special circumstances present in this case though,
this is not a sufficiently specific allegation to state a class of
one equal protection claim. It is recommended that the motion to
dismiss on this ground be granted.

## I.   Failure to Supervise, Train, or Intervene

Weirich argues that Ms. Stark has not plausibly stated a
constitutional claim based on Weirich's failure to supervise,
train, or intervene. Under certain circumstances, a government

official's deliberate indifference to another government actor's violations of someone's constitutional rights itself violates the Constitution. See Connick v. Thompson, 563 U.S. 51, 61 (2011). Ms. Stark alleges that Weirich:

> was aware of the existence of a pervasive environment and/or culture of civil rights abuse, including the covering up of and/or failing to investigate criminal activities of officers, within the ranks of the MPD on and prior to June 17, 2018. Further Defendant Weirich was aware that members of [the District Attorney's office] was [sic] often complicit in this environment or culture of abuse and did participate implicitly or explicitly in said behavior. As Shelby County District Attorney General, Defendant Weirich failed to properly train, supervise or take other reasonable and appropriate remedial actions which are within her official authority. These failures constitute a deliberate indifference to the violation of constitutional rights by members of MPD and members of [the District Attorney's office] and were the proximate cause of the injuries suffered by Plaintiff.

(ECF No. 1, 25 ¶ 115.) These allegations fall well short of plausibly alleging supervisory liability by Weirich. The allegations are conclusory and provide no specifics regarding what Weirich failed to do with respect to training or supervision. It is recommended that the motion to dismiss Ms. Stark's failure to supervise, failure to train, and failure to intervene claims be granted.

**J.    Claims Under the Tennessee Constitution**

Weirich and Lepone next argue Ms. Stark has failed to state a claim under the Tennessee Constitution.[5] There is no private right of action for damages under the Tennessee Constitution. Williams v. Leatherwood, 258 F. App'x 817, 824 (6th Cir. 2007); Epperson v. City of Humboldt, Tenn., 140 F. Supp. 3d 676, 689 (W.D. Tenn. 2015). Furthermore, Ms. Stark has abandoned her claims for injunctive relief against Weirich and Lepone.

Ms. Stark argues that the Tennessee Supreme Court recognized a right of action for damages for violations of the state constitution in City of Knoxville v. Entm't Res., LLC, 166 S.W.3d 650, 659 (Tenn. 2005). But the money damage claims in that case were based on violations of the federal constitution plead through 42 U.S.C. § 1983. See City of Knoxville v. Entm't Res., LLC, No. E200201143COAR3CV, 2003 WL 22762195, at *8 (Tenn. Ct. App. Nov. 21, 2003), aff'd on other grounds, 166 S.W.3d 650 (Tenn. 2005). It is recommended that the motion to dismiss on this ground be granted.

## K.    Intentional Infliction of Emotional Distress

---

[5]Weirich and Lepone did not raise their argument here until their reply brief. Ordinarily, arguments not raised until a reply brief are waived. See, e.g., Blythe v. Berryhill, No. 18-1028-TMP, 2019 WL 4277000, at *9 (W.D. Tenn. Sept. 10, 2019). The reason for this rule is fairness – parties usually cannot respond to arguments raised for the first time in a reply. Id. Here though, Ms. Stark had an opportunity to respond to this argument in her briefing on the city defendant's motion to dismiss. (ECF No. 56.) Given this, the undersigned finds no unfairness in addressing this argument.

Weirich and Lepone next argue that Ms. Stark has not plausibly stated an intentional infliction of emotional distress claim. "The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." Rogers v. Louisville Land Co., 367 S.W.3d 196, 205 (Tenn. 2012). Tennessee has adopted the approach taken by the Restatement (Second) of Torts to the second element of this tort, which provides that:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

Leach v. Taylor, 124 S.W.3d 87, 92 (Tenn. 2004) (quoting Bain v. Wells, 936 S.W.2d 618, 623 (Tenn. 1997). "The outrageous conduct requirement is a high standard which has consistently been regarded as a significant limitation on recovery." Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22, 39 (Tenn. 2005).

None of the allegations against Weirich and Lepone in the complaint satisfy this standard. The alleged conduct attributed to Weirich and Lepone in the complaint is not the kind of exceptionally offensive conduct that gives rise to liability for intentional infliction of emotional distress. Ms. Stark does not cite to any caselaw that suggests otherwise. It is recommended that the motion to dismiss on this ground be granted.

### III. RECOMMENDATION

For the reasons above, it is recommended that Weirich and Lepone's motion to dismiss be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 13, 2020
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**