IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

```
_____

PAMELA DIANE STARK,              )
                                 )
     Plaintiff,                  )
                                 )
v.                               )     No. 19-cv-2396-JTF-tmp
                                 )
CITY OF MEMPHIS, et al.,         )
                                 )
     Defendants.                 )
                                 )
_____
```

REPORT AND RECOMMENDATION
_____

Before the court is defendants Melissa Berry and Michelle Crawford's Motion to Dismiss, filed on August 19, 2019.[1] (ECF No. 36.) Plaintiff Pamela Stark, proceeding *pro se*, filed a response on September 16, 2019. (ECF No. 40.) Berry and Crawford replied on September 30, 2019. (ECF No. 45.) For the reasons below, it is recommended that the motion to dismiss be granted.

I.    PROPOSED FINDINGS OF FACT

Pamela Stark filed this complaint *pro se* on June 19, 2019. (Compl., ECF No. 1.) The complaint alleges several causes of action against sixteen defendants, fourteen named and two John

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

Does. The following findings of fact are based on the well-pleaded allegations in the complaint.

In June 2018, Pamela Stark was an Assistant District Attorney with the Office of the District Attorney General for the Thirtieth Judicial District of Tennessee. (Id. at 6 ¶ 22.) Pamela Stark is married to Joe Stark, a sergeant with the Memphis Police Department ("MPD"). (Id. at 6 ¶ 23.) After an alleged incident of domestic assault on June 17, 2018, Ms. Stark filed for divorce on June 29, 2018. (Id. at 6 ¶ 23; 10 ¶ 47.) Melissa Berry and Michelle Crawford acted as counsel for Joe Stark in the divorce proceedings. (Id. at 11 ¶ 54; 12 ¶ 56.)

On November 8, 2018, Ms. Stark amended her divorce complaint to include the tort of battery. (Id. at 10 ¶ 47.) According to the complaint, Mr. Stark directed other MPD officers to cover up the incident by filing the corresponding police report as a "memo" so that it would not be investigated. (Id. at 6-7 ¶¶ 25-27.) When the MPD's reporting system rejected the memo, an MPD officer filed a report listing Joe Stark as the victim of the domestic assault and Pamela Stark as a suspect. (Id. at 7-8 ¶¶ 31, 36.) On December 14, 2018, Ms. Stark posted on Facebook about "the propriety of law enforcement investigating cases where members of their own department may face criminal and/or civil liabilities," referencing the MPD's investigation into the domestic assault incident. (Id. at 11 ¶

- 2 -

52.) On January 3, 2019, Ms. Stark filed a notice that she intended to depose and issue subpoenas to Mr. Stark and four other MPD officers involved in investigating the June 17 assault. (Id. at 10 ¶ 49.) On January 7, 2019, Ms. Stark wrote a letter to City of Memphis Mayor Jim Strickland detailing her allegations of misconduct in the MPD's handling of the June 17 assault. (Id. at 10 ¶ 45.) The letter Ms. Stark sent Mayor Strickland was then forwarded to the City Attorney's Office. (Id. at 10 ¶ 46.)

On January 15, 2019, Berry filed a Petition for Restraining Order in state court, requesting that Ms. Stark be required to remove the Facebook post dated December 14, 2018, and be enjoined from making future posts or oral comments which might jeopardize Mr. Stark's employment or impugn his reputation with MPD. (Id. at 11 ¶ 55.) The stated rationale of the petition was the potential for MPD to retaliate against Mr. Stark based on Ms. Stark's public allegations about the investigation. (Id. at 11-12 ¶¶ 55, 59.) According to the complaint, Berry had communicated with the City Attorney's Office concerning the petition. (Id. at 12 ¶ 55.)

On January 23, 2019, the City Attorney's Office filed a Motion to Quash Ms. Stark's request to depose and subpoena the MPD officers regarding the June 17 assault investigation. (Id. at 11-12 ¶ 55.) On January 25, 2019, Berry informed Ms. Stark

that the City Attorney's Office intended to be present during the depositions of any MPD officers if any such depositions were permitted. (Id. at 11 ¶ 51.)

A hearing on the petition was held before Tennessee Circuit Court Judge Robert Weiss on February 7, 2019. (Id. at 12 ¶ 56.) Crawford acted as counsel for Mr. Stark at the hearing. (Id.) A member of the City Attorney's Office was present at the hearing. (Id. at 12 ¶ 57.) Judge Weiss ruled from the bench, stating that Ms. Stark was to have no communication with MPD or Mayor Strickland, to whom she had previously written a letter about her husband and the incident of domestic assault. (Id. at 10 ¶ 45; 12 ¶ 60.) When Ms. Stark said she would not remove the Facebook post or comply with Judge Weiss's ruling, she was taken into custody and held for several hours until she agreed to remove the Facebook post. (Id. at 12 ¶ 60.)

On February 13, 2019, Judge Weiss entered an Order of Petition for Restraining Order requiring Ms. Stark to remove the Facebook post and enjoining her from "making any other public allegation against . . . Joe Stark on social media (on any platform) or to his employer which may affect . . . [Joe Stark's] reputation or employment." (Id. at 13 ¶ 62.) On March 8, 2019, Berry filed a Motion to Amend Order of Petition for Restraining Order to Conform to Transcript in an effort to have

- 4 -

Judge Weiss's ruling from the bench incorporated into his written order. (Id. at 13 ¶ 64.)

Ms. Stark alleges that Berry and Crawford conspired with other defendants to deny her the right to redress her allegations of official misconduct in violation of 42 U.S.C. § 1983 and § 1985. (Id. at 21.) Ms. Stark also alleges that Berry and Crawford conspired with other defendants to violate her First Amendment right under the United States Constitution and violated her right to free speech under Art. I § 19 of the Tennessee Constitution. (Id. at 21, 23.) Berry and Crawford now move to dismiss the complaint under Rule 12(b)(6). (ECF No. 37.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court views Ms. Stark's allegations in the light most favorable to her and accepts all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than

merely possible." <u>Fritz v. Charter Twp. of Comstock</u>, 592 F.3d 718, 722 (6th Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 677). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007)). To satisfy this requirement, a plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." <u>Id.</u> (alteration omitted) (quoting <u>Twombly</u>, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

**B.   § 1983 and § 1985 Claims**

Ms. Stark seeks to assert several § 1983 and § 1985 claims against Berry and Crawford. Ms. Stark first alleges that Berry and Crawford conspired with the City, Mayor Strickland, representatives of the City Attorney's Office, and multiple MPD officers "to deny Plaintiff the right to redress of her allegations of official misconduct." (ECF No. 1 at 20-21 ¶ 98.) Ms. Stark's complaint also alleges violations of her rights to freedom of speech under the United States Constitution and

Tennessee Constitution.[2] (ECF No. 1 at 21 ¶ 99.) According to the complaint, Berry and Crawford conspired with the City and representatives of the City Attorney's Office "in an effort to have Plaintiff required to remove[] said [Facebook] post and [be] enjoined from making future allegations concerning the misconduct of MPD." (ECF No. 1 at 21-22 ¶ 103.)

As a preliminary matter, it is unclear the extent to which Ms. Stark meant to bring § 1985 claims against Berry and Crawford. The parties' briefs on the instant motion do not discuss § 1985 as a possible basis for Ms. Stark's claims. Notably, stating a conspiracy claim under § 1985(3) requires a plaintiff "to allege that the conspiracy was motivated by 'some racial or perhaps otherwise class-based, invidiously discriminatory animus.'" Dallas v. Holmes, 137 F. App'x 746, 752 (6th Cir. 2005) (quoting Bartell v. Lohiser, 215 F.3d 550, 559-60 (6th Cir. 2000)); see also Ohio ex rel. Moore v. Brahma Inv. Grp., Inc., 723 F. App'x 284, 288 (6th Cir. 2018) ("To state such a claim, plaintiffs must prove a conspiracy to deprive a person or class of persons of the equal protection of the laws, and an act in furtherance of the conspiracy which causes the constitutional deprivation."). Ms. Stark has not alleged membership in any protected class or that Berry and Crawford

_____

[2]Ms. Stark's claims under the Tennessee Constitution are addressed in the next section.

violated her right to equal protection, and thus has not stated
a cognizable claim under § 1985(3). See Dallas, 137 F. App'x at
752 ("Failure to allege membership in a protected class, and
discrimination based upon such membership, requires dismissal of
Plaintiffs' § 1985(3) claim."). To the extent Ms. Stark intended
to assert § 1985 claims against Berry and Crawford, such claims
should be dismissed.

This leaves Ms. Stark's § 1983 claims against Berry and
Crawford. Berry and Crawford argue that Stark fails to state a
claim against them under § 1983 because they are not state
actors. (ECF No. 37 at 6-9.) "To successfully plead a Section
1983 claim, a plaintiff must allege (1) the deprivation of a
right secured by the Constitution or laws of the United States
and (2) the deprivation was caused by a person acting under
color of state law." Conexx Staffing Servs. v. PrideStaff, No.
2:17-cv-02350, 2017 WL 9477760, at *2 (W.D. Tenn. Nov. 3, 2017)
(citing Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003)).
"[S]ection 1983 does not . . . prohibit the conduct of private
parties acting in their individual capacities." Campbell v. PMI
Food Equip. Grp., Inc., 509 F.3d 776, 783 (6th Cir. 2007); see
also Tahfs, 316 F.3d at 590 ("A plaintiff may not proceed under
§ 1983 against a private party 'no matter how discriminatory or
wrongful' the party's conduct.") (quoting Am. Mfrs. Mut. Ins.
Co. v. Sullivan, 526 U.S. 40, 50 (1999)). However, "'to act

'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.'" Moore v. City of Paducah, 890 F.2d 831, 834 (6th Cir. 1989) (quoting United States v. Price, 383 U.S. 787, 794 (1966)). "Thus, a private party may conspire with the state and be liable under § 1983." Id.

A plaintiff may state a § 1983 claim for conspiracy against private individuals by plausibly alleging "cooperation or concerted action between state and private actors." Memphis, Tenn. Area Local Am. Postal Workers Union v. City of Memphis, 361 F.3d 898, 905 (6th Cir. 2004); see also Cooper v. Parrish, 203 F.3d 937, 952 n.2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983."); Hooks v. Hooks, 771 F.2d 935, 943 (6th Cir. 1985) ("Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983."). "To prevail on a civil conspiracy claim, a plaintiff must show '[1] that there was a single plan, [2] that the alleged coconspirator shared in the general conspiratorial objective, and [3] that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'" Harcz v. Boucher, 763 F. App'x 536, 540 (6th

Cir. 2019) (quoting Hooks, 771 F.2d at 944). "'[P]leading requirements governing civil conspiracies are relatively strict.'" Id. (quoting Fieger v. Cox, 524 F.3d 770, 776 (6th Cir. 2008)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim[.]" Webb v. United States, 789 F.3d 647, 670 (6th Cir. 2015) (internal quotation marks omitted).

Ms. Stark points to various allegations in her complaint as sufficiently alleging a conspiracy involving Berry and Crawford. Ms. Stark alleges that Berry and Crawford "through their actions of litigating the Petition for Restraining Order and the Petition to Amend Order on Petition for Restraining Order did abridge Plaintiff's freedom of speech." (ECF No. 1 at 22 ¶ 105.) According to the complaint, "[t]his action, in whole or in part, was intended to further [Defendants'] attempts to prevent Plaintiff's allegation of official misconduct from becoming public." (Id.) Ms. Stark also alleges that Berry communicated with the City Attorney's Office about the Petition for Restraining Order. (ECF No. 1 at 11-12 ¶ 55; 23 ¶ 107.)

These allegations do not plausibly establish a conspiracy involving Berry and Crawford. The only factual allegation in the complaint that relates to Ms. Stark's conspiracy claims is that

"Berry . . . was in communication with the Memphis City Attorney's Office concerning the litigation of this Petition." (ECF No. 1 at 11-12 ¶ 55.) Later in the complaint, Ms. Stark again asserts that "Berry . . . did directly communicate with the City Attorney's Office concerning the litigation of said Restraining Order." (ECF No. 1 at 23 ¶ 107.) These vague assertions of communications between Berry and the City Attorney's Office are insufficient to plausibly allege the existence of a conspiracy so as to trigger § 1983 liability against Berry or Crawford. See Webb, 789 F.3d at 670; see also Harcz, 763 F. App'x at 540 (finding allegations that private citizens opposing a protest met with police and agreed to suppress the protest did not plausibly allege existence of a conspiracy); Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 564 (6th Cir. 2011) (finding allegations of individual defendants conferring with one another insufficient to plausibly suggest existence of conspiracy). It is not unexpected that the City Attorney's Office would insert itself into the state court divorce proceedings, since Ms. Stark had previously filed notice of her intention to depose and subpoena multiple MPD officers, which the City Attorney's Office subsequently moved to quash. (ECF No. 1 at 10 ¶ 49; 11-12 ¶ 55.) The only information Berry conveyed to Ms. Stark regarding the City Attorney's Office was that it intended to have a representative present during any

- 11 -

depositions of MPD officers. (Id. at 10 ¶ 51.) This allegation does nothing to support an inference of a conspiracy.

Ms. Stark also contends that the timing of certain events demonstrates a conspiracy, pointing to the fact that Berry and Crawford substituted in as counsel for Mr. Stark in the state court divorce proceedings on January 9, 2019, less than a month after Ms. Stark published the Facebook post criticizing the MPD and two days after she sent a letter to Mayor Strickland detailing her allegations. (ECF No. 40 at 9-10.) These allegations are simply insufficient to establish a "single plan" shared and acted upon by Berry and Crawford. See Harcz, 763 F. App'x at 540; see also Heyne, 655 F.3d at 564 ("[Plaintiff's] failure to plead a plan or agreement to violate his constitutional rights is fatal to his conspiracy claim."). Ultimately, Ms. Stark "ha[s] not pleaded facts sufficient to nudge [her] conspiracy beyond the speculative." See Harcz, 763 F. App'x at 541.

Ms. Stark alternatively argues that regardless of her conspiracy claims, the complaint sufficiently establishes that the conduct of Berry and Crawford is attributable to the state. (ECF No. 40 at 11.) The Sixth Circuit "recognizes three tests for determining whether [a private entity's] conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test." Am. Postal Workers Union,

- 12 -

361 F.3d at 905 (citing <u>Wolotsky v. Huhn</u>, 960 F.2d 1331 (6th Cir. 1992)). Ms. Stark has not plausibly established that Berry and Crawford are state actors under any of these three tests. "The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections, or eminent domain." <u>Wolotsky</u>, 960 F.2d at 1335 (internal citations omitted). Neither Berry nor Crawford were exercising such powers.

As for the state compulsion test, this test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." <u>Id.</u> (citations omitted). "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." <u>Id.</u> (citation omitted). Ms. Stark contends that the City compelled Berry and Crawford to seek a restraining order, pointing to the communication between Berry and the City Attorney's Office as well as the concern of adverse consequences to Mr. Stark resulting from Ms. Stark's public criticism of the MPD. These allegations fail to plausibly establish an exercise of "coercive power" or "significant encouragement" by the City regarding the actions of Berry or Crawford. <u>See</u> <u>id.</u>

Lastly, Ms. Stark cannot plausibly establish that Berry and Crawford are state actors under the symbiotic relationship test. "Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." Id. (citations omitted). "[I]t must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983." Id. (citation omitted). While the MPD may have benefitted from the restraining order obtained by Berry and Crawford, the allegations in the complaint fall well short of plausibly establishing any "intimate involvement" in the challenged action. See id.

In essence, Ms. Stark seeks to classify Berry and Crawford as state actors based on their representation of Mr. Stark. "It is well-settled, however, that 'a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983.'" Maben v. Terhune, No. 16-1025, 2016 WL 9447153, at *3 (6th Cir. Aug. 19, 2016) (quoting Polk County v. Dodson, 454 U.S. 312, 318 (1981)). "An attorney's representation of a client, without more, does not amount to state action cognizable under § 1983.

- 14 -

Attorneys, in their representation of their clients, cannot be considered state actors subject to § 1983 liability." Meros v. Kilbane, No. 95-4296, 1997 WL 48984, at *2 (6th Cir. Feb. 4, 1997) (citing Whittington v. Milby, 928 F.2d 188, 193 (6th Cir. 1991)). Because Berry and Crawford are not state actors, Ms. Stark cannot bring a claim against them under § 1983.

C.  **Claims Under the Tennessee Constitution**

Ms. Stark additionally asserts that Berry and Crawford violated her right to freedom of speech under the Tennessee Constitution. Although the parties do not address the issue in their briefs, it must be noted that there is no private right of action for damages under the Tennessee Constitution. Williams v. Leatherwood, 258 F. App'x 817, 824 (6th Cir. 2007); Epperson v. City of Humboldt, Tenn., 140 F. Supp. 3d 676, 689 (W.D. Tenn. 2015). To the extent that there is a private right of action for injunctive relief under the Tennessee Constitution, Ms. Stark fails to state a claim against Berry and Crawford, as the complaint provides no insight into what conduct violated her right to freedom of speech under the Tennessee Constitution. See Barnett v. Luttrell, 414 F. App'x 784, 786 (6th Cir. 2011) ("To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation marks omitted). Unlike Ms. Stark's first amendment claims against Berry and

- 15 -

Crawford, which relied on the existence of a conspiracy with
state actors, her claim under the Tennessee Constitution states
that Berry and Crawford "did abridge Plaintiff's right to
freedom of speech and expression as guaranteed by Article 1,
section 19 of the Tennessee Constitution and is wholly without
justification." (ECF No. 1 at 23-24.) However, it is well-
established that a plaintiff must plead more than "labels and
conclusions," "a formulaic recitation of the elements of a cause
of action," or "naked assertions devoid of further factual
enhancement." Iqbal, 556 U.S. at 678. Accordingly, it is
recommended that Ms. Stark's claims against Berry and Crawford
under the Tennessee Constitution be dismissed.

Although this disposes of the last of Ms. Stark's claims
against Berry and Crawford, for the sake of completeness the
court will address the parties' arguments regarding res judicata
and the Rooker-Feldman doctrine below.

**D.    Res Judicata**

Berry and Crawford argue that res judicata precludes Ms.
Stark from asserting § 1983 and § 1985 claims for monetary
damages against them. (ECF No. 37 at 9-12.) Res judicata
requires the court "to give the same effect to the Tennessee
state court judgment as would another Tennessee state court."
Hutcherson v. Lauderdale Cty., 326 F.3d 747, 758 (6th Cir. 2003)
(citing 28 U.S.C. § 1738; Marrese v. Am. Acad. of Orthopaedic

- 16 -

<u>Surgeons</u>, 470 U.S. 373, 380 (1985)). "The state of Tennessee
bars under res judicata 'all claims that were actually litigated
or could have been litigated in the first suit between the same
parties.'" <u>Id.</u> (quoting <u>Am. Nat'l Bank & Trust Co. of
Chattanooga v. Clark</u>, 586 S.W.2d 825, 826 (Tenn. 1979)).
Accordingly, the term "res judicata," as used here, encompasses
both claim preclusion and issue preclusion. <u>Id.</u> at 758 n.3.
"Four elements must be established before res judicata can be
asserted as a defense: (1) the underlying judgment must have
been rendered by a court of competent jurisdiction; (2) the same
parties were involved in both suits; (3) the same cause of
action was involved in both suits; and (4) the underlying
judgment was on the merits." <u>Id.</u> at 758 (citing <u>Collins v.
Greene Cty. Bank</u>, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995); <u>Lee
v. Hall</u>, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990)).

    The court need not delve deeply into all four elements of
res judicata because Berry and Crawford have not established
that there was a "judgment on the merits" of Ms. Stark's claims
in state court. <u>See Hanger Prosthetics & Orthotics East, Inc. v.
Henson</u>, 299 F. App'x 547, 556 (6th Cir. 2008) ("[T]he standards
set out in Rule 12(b)(6) typically set a high hurdle for the
application of res judicata[.]"). Berry and Crawford summarily
assert that Judge Weiss's order was "a judgment on the merits
that was rendered by a court of competent jurisdiction." (ECF

No. 37 at 11.) Yet, "[f]or res judicata . . . to apply, the judgment in the prior case must have been final." <u>Sims v. Adesa Corp.</u>, 294 S.W.3d 581, 586 (Tenn. Ct. App. 2008); <u>see also</u> <u>Richardson v. Tennessee Bd. of Dentistry</u>, 913 S.W.2d 446, 459 (Tenn. 1995) ("Res judicata and collateral estoppel apply only if the prior judgment concludes the rights of the parties on the merits."). "In Tennessee, a judgment is final 'when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court.'" <u>Richardson</u>, 913 S.W.2d at 460 (quoting <u>Saunders v. Metropolitan Gov't of Nashville & Davidson Cty.</u>, 383 S.W.2d 28, 31 (Tenn. 1964)). Final, in these circumstances, also means final on appeal. <u>See</u> <u>Cartwright v. Garner</u>, No. W2016-01424-COA-R3-CV, 2018 WL 4492742 (Tenn. Ct. App. Sep. 19, 2018) ("Under Tennessee law, a 'judgment is not final and <i>res judicata</i> where an appeal is pending.'") (quoting <u>Creech v. Addington</u>, 281 S.W.3d 363, 377 (Tenn. 2009)).

Here, Berry and Crawford have not demonstrated that Judge Weiss's February 13 order constitutes a final judgment on the merits. "[T]he order under review . . . was not a final judgment, but rather an interlocutory order, and accordingly, it is not protected under the doctrine of res judicata." <u>Sims</u>, 294 S.W.3d at 586; <u>see also</u> <u>Isbell v. Hatchett</u>, No. W2014-00633-COA-R3-CV, 2015 WL 756883, at *6 (Tenn. Ct. App. Feb. 23, 2015) ("The Shelby County Order was not a final judgment. The order .

- 18 -

. . did not adjudicate all of the claims of the parties, nor was it certified as final with respect to fewer than all of the parties' claims pursuant to [Tenn. R. Civ. P.] 54.02."). Berry and Crawford have not shown that the doctrine of res judicata bars Ms. Stark's claims from proceeding in this federal forum.

## E.    **Rooker-Feldman Doctrine**

Berry and Crawford additionally contend that the Rooker-Feldman doctrine bars this court from considering Ms. Stark's request for injunctive relief. (ECF No. 37 at 13-15.) The Rooker-Feldman doctrine stems from two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a). See Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983). "Section 1257(a) states that a final judgment of the highest court of a state may be reviewed by the United States Supreme Court by writ of certiorari." Lawrence v. Welch, 531 F.3d 364, 368 (6th Cir. 2008). "The Rooker-Feldman doctrine is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not be had in the lower federal courts." Id. (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84 (2005)). Accordingly, under the Rooker-Feldman doctrine, "lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the

United States Supreme Court has jurisdiction to correct state
court judgments." Gottfried v. Med. Planning Servs., Inc., 142
F.3d 326, 330 (6th Cir. 1998). The Rooker-Feldman doctrine is
applicable to constitutional cases brought under 42 U.S.C. §
1983, since federal courts must give "full faith and credit" to
state court judicial proceedings. Id. (citing 28 U.S.C. § 1738).

    Here, Ms. Stark requests in her complaint "a permanent
injunction restraining and prohibiting Defendant's [sic] from
continuing or enforcing the Restraining Order entered by Judge
Weiss against Plaintiff." (ECF No. 1 at 29 ¶ 139.) Berry and
Crawford argue that such a request effectively asks the court to
review and overturn the state court's order, which runs afoul of
the Rooker-Feldman doctrine. (ECF No. 37 at 13.) However, as
recently stated by a panel of the Sixth Circuit, "the Rooker-
Feldman doctrine applies only to the 'narrow ground' of 'cases
brought by state-court losers complaining of injuries caused by
state-court *judgments* rendered *before* the district court
proceedings commenced and inviting district court review and
rejection of those judgments.'" Quality Assocs. v. P&G Distrib.
LLC, No. 19-3137, 2020 WL 611075, at *5 (6th Cir. Feb. 10, 2020)
(quoting Exxon, 544 U.S. at 292) (emphasis in Quality Assocs.).
Accordingly, Rooker-Feldman does not preclude lower federal
courts from exercising subject-matter jurisdiction over claims
attacking interlocutory state court decisions. See id. at *5 n.5

(noting that prior Sixth Circuit case law applying <u>Rooker-</u>
<u>Feldman</u> to interlocutory decisions "has since been displaced by
<u>Exxon</u>."). In light of the Sixth Circuit's recent decision in
<u>Quality Associates</u>, the undersigned recommends finding that the
<u>Rooker-Feldman</u> doctrine does not preclude the court from
exercising subject-matter jurisdiction over Ms. Stark's claims
for injunctive relief.

### III. RECOMMENDATION

For these reasons, it is recommended that the Motion to
Dismiss be granted.

Respectfully submitted,

<div style="margin-left:40%">

s/ Tu M. Pham
_____
TU M. PHAM
United States Magistrate Judge

February 13, 2020
_____
Date

</div>

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS
REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE
SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND
RECOMMENDATIONS.  ANY PARTY MAY RESPOND TO ANOTHER PARTY'S
OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A
COPY.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R.
72.1(g)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14)
DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND
FURTHER APPEAL.**