IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

PAMELA DIANE STARK,              )
                                 )
      Plaintiff,                 )
                                 )
v.                               )      No. 19-2396-JTF-tmp
                                 )
CITY OF MEMPHIS, et al.,         )
                                 )
      Defendants.                )
                                 )

_____

REPORT AND RECOMMENDATION
_____

Before the court is a Motion to Dismiss brought by defendants the City of Memphis, Mayor Jim Strickland, Michael Rallings, Don Crowe, Stephen Roach, Daniel Cordero, Officer Ervin,[1] Bruce McMullen, Zayid Saleem, Joe Stark, and two John Does pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] (ECF No. 43.) For the following reasons, the undersigned recommends that the motion be granted in part and denied in part.

I.    PROPOSED FINDINGS OF FACT

Pamela Stark filed this complaint *pro se* on June 19, 2019. (Compl., ECF No. 1.) The complaint alleges several causes of action

_____

[1]Ervin's first name is not identified by any document in the docket.

[2]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

against sixteen defendants, fourteen named and two named as John Does. The following findings of fact are based on the well-pleaded allegations in the complaint.

In June 2018, Ms. Stark was an Assistant District Attorney with the Office of the District Attorney General for the Thirtieth Judicial District of Tennessee. (Id. at 6 ¶ 22.) Ms. Stark worked as a community prosecutor serving the Memphis Police Department's ("MPD") Tillman Precinct, and had an office in the MPD's station there. (Id. at 6, 14 ¶ 22, 66.) Ms. Stark is married to Joe Stark, a sergeant in the MPD. (Id. at 6 ¶ 23.)

On June 17, 2018, Mr. Stark allegedly assaulted Ms. Stark in her home. (Id. at 6 ¶¶ 24-25.) To prevent Ms. Stark from filing charges against him, on June 25, 2019, Mr. Stark contacted another MPD officer, Officer Ervin, and had him file a police report about the incident as a "memo." (Id. at 6-7 ¶¶ 25-26.) The MPD has a policy of not investigating police reports filed as memos. (Id. at 7 ¶ 27.) However, the next day, the MPD's reporting system rejected the memo because Tennessee state law prohibits the MPD from designating reports of domestic violence as memos. (Id. at 7 ¶ 30.) As a result, an MPD officer filed a report listing Mr. Stark as the victim of June 17 assault and Ms. Stark as a suspect. (Id. at 7-8 ¶¶ 31, 36.) Ms. Stark filed for divorce shortly thereafter. (Id. at 10 ¶ 46.)

On June 25 and June 27, 2018, John Does 1 and 2, a senior MPD officer and an MPD domestic violence investigator, respectively, met with Ms. Stark's supervisor at the District Attorney's office. (Id. at 7 ¶¶ 28, 32.) At these meetings, the officers asked Ms. Stark's supervisor to encourage Ms. Stark to not report the June 17 assault. (Id.)

A few days later, Daniel Cordero, a detective in the MPD's domestic violence unit, met with Ms. Stark. (Id. at 8 ¶¶ 34-35.) At this meeting, Cordero "refused to take names of witnesses, a copy of a photograph detailing injuries of Plaintiff, or visit the scene as requested by Plaintiff." (Id. at 8 ¶ 34.) Cordero said he believed Ms. Stark's account of the incident. (Id.) Cordero also said that he had interviewed Mr. Stark and that Mr. Stark refused to give an official statement except to deny that Ms. Stark had harmed him. (Id.)

About a week and a half later, Ms. Stark learned that the police report about the June 17 assault indicated that she was the aggressor and that Mr. Stark was the victim. (Id. at 8 ¶ 36.) Reports filed in the MPD's system are available to all MPD officers and to staff in the District Attorney's office. (Id. at 28 ¶ 131.) The report of the June 17 assault was marked confidential, meaning that most of the contents of the report were only visible to specially designated persons. (Id. at 8 ¶ 36.) However, even non-designated persons could see who was marked as a suspect, who was

marked as the victim, and that the report was of domestic violence. (Id.) Ms. Stark asked Cordero and Cordero's supervisor in the domestic violence division, Stephen Roach, to change the designation of the report so she was no longer shown as a suspect. (Id. at 8 ¶ 37.) Cordero and Roach said they would have Don Crowe, the MPD's chief of information technology, do that. (Id.) However, the designation was never changed. (Id.) Another week later, Ms. Stark asked Cordero and Roach to file another domestic violence report about the June 17 assault, which they refused to do. (Id.)

In December 2018, Ms. Stark became concerned that the MPD was mishandling the investigation of the June 17 assault. On December 14, 2018, Ms. Stark criticized the MPD's handling of the investigation on Facebook. (Id. at 11 ¶ 52.) The next day, members of the MPD contacted Ms. Stark's supervisor at the District Attorney's office to express concerns about Ms. Stark's Facebook post. (Id. at 11 ¶ 53.) Ms. Stark's supervisor "began a pattern of harassing and intimidating communications" with Ms. Stark to convince her to remove the Facebook post and drop the allegations against her husband. (Id.) In January 2019, Ms. Stark wrote a letter to the mayor of Memphis, Jim Strickland, about her concerns with the MPD's investigation. (Id. at 10 ¶ 45.) Mayor Strickland wrote back to say that he was forwarding Ms. Stark's letter to Bruce McMullen, the City Attorney. (Id.) Mayor Strickland also

forwarded Ms. Stark's letter to the District Attorney's office. (Id. at 10 ¶ 46.)

Around the same time, in her divorce case, Ms. Stark sought to depose five MPD officers, including her husband and Cordero. (Id. at 10 ¶ 49.) The City of Memphis, represented by McMullen and Zayid Saleem, an attorney with the City Attorney's Office, filed a motion for a protective order barring Ms. Stark from either deposing those officers or obtaining any discovery about the MPD's investigation of the June 17 assault. (Id. at 10-11 ¶ 50.) Mr. Stark's divorce lawyer also informed Ms. Stark that if the court allowed her to depose the MPD officers, a representative from the City Attorney's office would be present. (Id. at 11 ¶ 51.)

As this was happening, Mr. Stark filed a motion in his divorce proceedings to enjoin Ms. Stark from publicly criticizing him or the MPD while the divorce was pending. (Id. at 11 ¶ 55.) On February 7, the state court granted the motion. (Id. at 12, 13 ¶¶ 60, 62.) Almost immediately after the state court enjoined Ms. Stark, the MPD banned Ms. Stark from police property, and two MPD officers refused to testify in a suppression hearing in a murder case she was handling. (Id. at 13-14 ¶¶ 65-67.) Ms. Stark alleges that Mr. Stark induced the two MPD officers to refuse to testify in the suppression hearing. (Id.) Ms. Stark took the view that the state court injunction prohibited her from telling her supervisor at the District Attorney's office about the MPD's efforts to disrupt her

cases and that she could not ethically continue to serve as a prosecutor if the MPD continued to disrupt her cases. (Id. at 14 ¶¶ 68-69.) Ms. Stark thus resigned from her position. (Id. at 14 ¶ 70.) After resigning, Ms. Stark was contacted by FBI agents who wished to meet with her about her complaints of police misconduct, but she was unable to do so because of the restraining order. (Id. at 13 ¶ 63.)

Ms. Stark brings claims against the City of Memphis, Mayor Strickland, Mr. Stark, Cordero, Crowe, Roach, Ervin, McMullen, Saleem, John Does 1 and 2, and Michael Rallings, the MPD's director, (collectively "the city defendants") based on 42 U.S.C. § 1983 and § 1985, the Tennessee Constitution, and various state law torts. In support of her § 1983 claims, Ms. Stark alleges the city defendants violated her federal constitutional free speech, equal protection, and substantive and procedural due process rights. Ms. Stark also alleges that Rallings and Mayor Strickland are liable for constitutional violations committed by other defendants based on their alleged supervisory liability, failure to train, and failure to intervene. In support of her § 1985 claims, Ms. Stark alleges that the city defendants conspired with each other and various other people to deprive her of the same federal constitutional rights.[3] In support of her state

---

[3]The scope of this conspiracy is somewhat unclear from the complaint. Certain city defendants are accused by name of

constitutional claims, Ms. Stark alleges the city defendants violated her free speech rights. Ms. Stark further alleges that Mayor Strickland, Rallings, Crowe, McMullen, Saleem, and Mr. Stark committed the tort of intentional infliction of emotional distress; that the City of Memphis, Mayor Strickland, Rallings, and Mr. Stark committed the tort of interference with business relationships; and that the City of Memphis, Rallings, Crowe, Cordero, and John Doe 2 committed the tort of false light invasion of privacy. Ms. Stark seeks money damages, including punitive damages, and injunctions (1) "restraining and prohibiting Defendant's [sic] from listing Plaintiff as a suspect in a domestic violence assault in conjunction with the events of June 17, 2018" and (2) "restraining and prohibiting Defendant's [sic] from continuing or enforcing the Restraining Order entered by Judge Weiss against Plaintiff." (Id. at 28-29 ¶ 138-139.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard of Review

The city defendants bring their motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Federal

---

conspiracy in paragraphs 78, 87, 89, 98, 101, 103, and 104 of the complaint, and could be read as part of the group of unspecified defendants who are accused of conspiracy in paragraphs 1, 80, 81 and 99. In these paragraphs, different combinations of defendants are accused of conspiracy. Furthermore, in many other paragraphs in the complaint, long strings of city defendants are accused of acting to deny Ms. Stark constitutional rights, which may be an attempt to allege yet more conspiracies.

courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 553 (6th Cir. 2012). A challenge to this court's subject-matter jurisdiction can come in two forms. A facial attack accepts the material allegations of the complaint as true but insists nonetheless that the court lacks subject-matter jurisdiction to hear the case. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). A factual attack claims that the court lacks subject-matter jurisdiction regardless of what the plaintiff has pleaded and requires the trial court to weigh the evidence before it in determining whether that is the case. Id. The city defendants have raised a facial challenge here.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court views Ms. Stark's allegations in the light most favorable to her and accepts all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of

Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556
U.S. at 677). "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Iqbal, 556
U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557
(2007)). To satisfy this requirement, a plaintiff must plead more
than "labels and conclusions," "a formulaic recitation of the
elements of a cause of action," or "naked assertions devoid of
further factual enhancement." Id. (alteration omitted) (quoting
Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged." Id.

## B.   **Rooker-Feldman**

The city defendants first argue that Ms. Stark's First
Amendment claims and her claims for injunctive relief are barred
by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine bars
federal district courts from "exercising appellate jurisdiction
over final state-court judgments." Lance v. Dennis, 546 U.S. 459,
463 (2006). The doctrine "is based on the negative inference that,
if appellate court review of [final] state judgments is vested in
the Supreme Court, then it follows that such review may not be had
in the lower federal courts." Lawrence v. Welch, 531 F.3d 364, 368
(6th Cir. 2008) (citing Exxon Mobil Corp. v. Saudi Basic Indus.

Corp., 544 U.S. 280, 283-84 (2005)); see 28 U.S.C. § 1257(a)
("Final judgments or decrees rendered by the highest court of a
State in which a decision could be had, may be reviewed by the
Supreme Court by writ of certiorari.").

There is a circuit split about whether the Rooker-Feldman
doctrine bars challenges to state court interlocutory orders.
Harold v. Steel, 773 F.3d 884, 886 (7th Cir. 2014) (describing the
split). Until quite recently, the rule in the Sixth Circuit had
been that Rooker-Feldman applied to interlocutory orders. Pieper
v. Am. Arbitration Ass'n, Inc., 336 F.3d 458, 461 (6th Cir. 2003).
However, just last week a panel of the Sixth Circuit announced
that this caselaw is inconsistent with the Supreme Court's holdings
in Exxon and Lance and clarified the doctrine applies only to final
judgments. Quality Associates, Inc. v. Proctor & Gamble
Distributing LLC, No. 19-3137, 2020 WL 611075, at *5 n.2 (6th Cir.
Feb. 10, 2020). Ms. Stark's complaint does not attack a final
judgment by a state court and is thus not barred by the Rooker-
Feldman doctrine. It is recommended that the motion to dismiss on
this ground be denied.

## C. The Domestic Relations Exception

The city defendants next argue that the court lacks
jurisdiction over this case because it falls within the domestic
relations exception to federal jurisdiction. The domestic
relations exception to federal jurisdiction "encompasses only

cases involving the issuance of a divorce, alimony, or child custody decree[.]" Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992). If a plaintiff does not seek one of those three prohibited remedies, the domestic relations exception does not apply. See Chevalier v. Estate of Barnhart, 803 F.3d 789, 798 (6th Cir. 2015) ("Because none of the claims or remedies requires a federal court to dissolve the marriage, award alimony, monitor [the plaintiff's] need for maintenance and support, or enforce [the defendant's] compliance with a related court order, [the plaintiff's] claims are not subject to the domestic-relations exception to federal diversity jurisdiction.").

The city defendants do not appear to claim that Ms. Stark is seeking any of those forms of relief. They argue instead that Ms. Stark is asking "this court to perform tasks 'functional[ly] equivalent [to] divorce proceedings' because she is dissatisfied with the state court process." (ECF No. 43.) The city defendants do not provide a citation for the language they quote suggesting the domestic relations exception prohibits courts from granting relief "functional[ly] equivalent [to] divorce proceedings[.]" However, the undersigned has located the source: the District Court for the Southern District of Ohio's decision in Chevalier v. Estate of Barnhart, 992 F. Supp. 2d 810, 816 (S.D. Ohio 2014). When Chevalier was appealed, the Sixth Circuit *reversed* the district court because the Chevalier plaintiff was not seeking one of the

- 11 -

three remedies the domestic relations exception forbids. Chevalier, 803 F.3d at 798. Just as in Chevalier, Ms. Stark is not demanding this court grant a divorce, award alimony or another form of support, or determine child custody. Consequently, her claims are not barred by the domestic relations exception. It is recommended that the city defendants' motion to dismiss on this ground be denied.

### D.    **Younger** Abstention

The city defendants contend that the court should decline to exercise jurisdiction in this case under the abstention doctrine established in Younger v. Harris. 401 U.S. 37, 44 (1971). In general, "federal courts are obliged to decide cases within the scope of federal jurisdiction." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013). However, there are special circumstances where principles of federalism and comity between state and federal courts oblige federal courts to decline to hear cases where parallel state and federal litigation would be unduly disruptive. New Orleans Pub. Serv., Inc. ("NOPSI") v. Council of City of New Orleans, 491 U.S. 350, 367 (1989). This obligation to abstain is called Younger abstention. 401 U.S. at 44. A full Younger analysis involves three steps. See Aaron v. O'Connor, 914 F.3d 1010, 1016-21 (6th Cir. 2019). First, the court examines whether the case before it may interfere with one of the three types of proceedings the Supreme Court has identified as being protected by Younger.

NOPSI, 491 U.S. at 367-68. If the case falls within one of the three categories where abstention may be appropriate, the court applies a three-criteria test to determine if abstention is warranted, drawn from Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). If all three criteria from the Middlesex test are met, the court finally examines whether the case falls within one of the exceptions to the Younger doctrine. Aaron, 914 F.3d at 1019. Whether abstention is appropriate is evaluated on a claim-by-claim basis. See Doran v. Salem Inn, Inc., 422 U.S. 922, 928 (1975). If abstention is appropriate, a court dismisses claims seeking equitable or otherwise discretionary relief, but stays claims seeking remedies available at law, such as money damages, until the conclusion of the state proceedings. James v. Hampton, 513 F. App'x 471, 476 (6th Cir. 2013).

The three types of proceedings that may be protected by the Younger doctrine are (1) ongoing state criminal prosecutions, (2) civil enforcement proceedings that are akin to criminal prosecutions, and (3) civil proceedings involving orders that are uniquely in furtherance of the state courts' ability to perform judicial functions. NOPSI, 491 U.S. at 367-68. "[E]ven minimal interference" with a protected proceeding may justify abstention. Shafizadeh, 476 F. App'x at 73 (quoting J.P. v. DeSanti, 653 F.2d 1080, 1084 (6th Cir. 1981)).

The city defendants argue there are two proceedings protected by _Younger_ implicated by Ms. Stark's suit: the criminal investigation into the June 17 assault and her divorce case. The argument that _Younger_ abstention is warranted based on an ongoing criminal investigation into the June 17 assault can be dealt with quickly. _Younger_ is a doctrine about comity between state and federal courts. It does not apply where there is no relevant state court proceeding. A criminal investigation is not a state court proceeding for _Younger_ purposes. _See_ _Newell v. Cty. of Wayne_, No. 12-CV-14928, 2013 WL 4613613, at *3 (E.D. Mich. Aug. 29, 2013). As such, _Younger_ does not bar this court from considering Ms. Stark's claims related to the investigation into the June 17 assault.[4]

The pending divorce action raises more serious _Younger_ concerns. Divorce proceedings are civil proceedings that may involve orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. _See_ _Shafizadeh_, 476 F. App'x at 73. Ms. Stark seeks to enjoin the enforcement of a state court order.[5] This fits the third _NOPSI_ category.

---

[4]There is also no evidence that there is, in fact, an ongoing investigation into the June 17 assault.

[5]Conceivably, other aspects of Ms. Stark's complaint could present _Younger_ concerns, like her claims against McMullen and Saleem for attempting to quash certain discovery. However, for the reasons discussed below, the undersigned recommends dismissing those claims.

- 14 -

Once a proceeding is found to fit a NOPSI category, the next question is if the Middlesex test is satisfied. "If '(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims,'" the Middlesex test is satisfied, and a federal court should usually abstain under Younger. Aaron, 914 F.3d at 1018 (quoting Doe v. Univ. of Kentucky, 860 F.3d 365, 369 (6th Cir. 2017)). If a plaintiff contends they lack an adequate opportunity to raise a constitutional challenge, the plaintiff is obliged to present "unambiguous authority" showing they are barred from presenting their constitutional claims. Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987).

Here, the first two prongs of the Middlesex test are clearly met. Ms. Stark's divorce proceeding is ongoing and divorce proceedings involve important state interests. See Shafizadeh, 476 F. App'x at 73. Ms. Stark disputes the third prong, arguing that there is not an adequate opportunity to raise her constitutional arguments in state court. But Ms. Stark cites no authority to that effect. This is not sufficient to overcome the presumption that state courts will adequately safeguard federal constitutional rights. See Pennzoil, 481 U.S. at 15. The Middlesex test is thus satisfied.

There are exceptions to the <u>Younger</u> doctrine. However, the burden is on the plaintiff to show that an exception to the <u>Younger</u> doctrine applies. <u>Squire v. Coughlan</u>, 469 F.3d 551, 557 (6th Cir. 2006). Ms. Stark has not argued any exception applies. It is recommended that the motion to dismiss on this ground be granted as to Ms. Stark's request for injunctive relief enjoining enforcement of the state court's order, and in all other respects be denied.[6]

**E.    Official Capacity § 1983 Claims**

The city defendants argue that Ms. Stark's claims against those municipal defendants sued in their official capacities are redundant because a claim against a government official in their official capacity is a suit against the entity they represent, and the City of Memphis is a defendant in this action. An official capacity claim against a municipal official is another way of pleading a claim against that official's municipality. <u>See</u> <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 n.55 (1978). When a government employee is sued in their official capacity alongside his or her employer, the official capacity claim is redundant and may be dismissed. <u>Robertson v. Shelby Cty., Tennessee</u>, No. 05-2579 P, 2007 WL 9706140, at *7 (W.D. Tenn. July

---

[6]This report also recommends Ms. Stark's claim for injunctive relief be dismissed for failure to state a claim for the reasons discussed in section II-H below.

13, 2007); but see Doe v. Corr. Corp. of Am., No. 3:15-CV-68, 2015
WL 4067765, at *3 (M.D. Tenn. July 2, 2015) (holding otherwise).
It is recommended that the claims against individual defendants in
their official capacities be dismissed.

**F.    Conspiracy Under § 1983 or § 1985**

"To successfully plead a § 1983 conspiracy, a plaintiff must
allege sufficient facts to state a claim that '(1) a single plan
existed, (2) the conspirators shared a conspiratorial objective to
deprive the plaintiffs of their constitutional rights, and (3) an
overt act was committed.'" Arsan v. Keller, No. 18-3858, 2019 WL
3494330, at *10 (6th Cir. Aug. 1, 2019) (quoting Revis v. Meldrum,
489 F.3d 273, 290 (6th Cir. 2007)). Failure to allege a single
plan or agreement is fatal to a § 1983 conspiracy claim. Id.
"Although circumstantial evidence may prove a conspiracy, 'it is
well-settled that conspiracy claims must be pled with some degree
of specificity and that vague and conclusory allegations
unsupported by material facts will not be sufficient to state such
a claim under § 1983." Heyne v. Metro. Nashville Pub. Sch., 655
F.3d 556, 563 (6th Cir. 2011) (quoting Spadafore v. Gardner, 330
F.3d 849, 854 (6th Cir. 2003). These pleading requirements are
"relatively strict." Fieger v. Cox, 524 F.3d 770, 776 (6th Cir.
2008).

With two limited exceptions, Ms. Stark has not plausibly
alleged the existence of a conspiracy.[7] Though Ms. Stark claims at
many points in the complaint that various groups of defendants
conspired together, or that all of the defendants conspired
together, Ms. Stark has not alleged facts that give rise to a
plausible inference that any of the combinations of conspirators
she identifies entered into a single plan to deprive her of her
constitutional rights. It is true that various defendants are
accused of meeting with one another throughout the complaint. But
these alleged meetings do not plausibly suggest a conspiracy. Cf.
Harcz v. Boucher, 763 F. App'x 536, 540 (6th Cir. 2019) (claim
that private citizens opposing protest met with police and agreed
to suppress protest did not plausibly allege existence of a
conspiracy); Heyne, 655 F.3d at 564 (fact defendants communicated
with each other did not plausibly suggest existence of conspiracy).
Furthermore, the vast majority of the conduct that Ms. Stark
contends represents the product of a conspiracy or conspiracies
against her represents the "natural, unilateral reaction" of each
defendant acting individually. Twombly, 550 U.S. at 566. For
example, it is difficult to make the inference that the City
Attorney's office sought to quash Ms. Stark's depositions of
several police officers due to a conspiracy when the "natural

---

[7]The exceptions are discussed in section II-H below.

explanation" for that conduct is that the City Attorney's office ordinarily moves to quash depositions that would be burdensome for the City. Id. at 568. The complaint also alleges facts indicating that defendants who are alleged to have conspired together acted in a manner inconsistent with being co-conspirators. For example, John Doe 2 is alleged to have met with Ms. Stark's supervisor at the District Attorney's office to ask the supervisor to discourage Ms. Stark from bringing charges against her husband. The complaint alleges the supervisor then told the MPD's chief to remove John Doe 2 from the inquiry into the June 17 assault. These allegations, if anything, suggest John Doe 2 was not conspiring with the supervisor. Ms. Stark has not plausibly alleged a § 1983 conspiracy.

This leaves Ms. Stark's § 1985 claims. "A § 1985(3) cause of action for conspiracy requires that the plaintiff prove four elements: (1) the existence of a conspiracy; (2) the purpose of the conspiracy was to deprive any person or class of persons the equal protection or equal privileges and immunities of the law; (3) an act in furtherance of the conspiracy; and (4) injury or deprivation of a federally protected right." Royal Oak Entm't, LLC v. City of Royal Oak, Michigan, 205 F. App'x 389, 399 (6th Cir. 2006). Furthermore, to prove a § 1985 conspiracy, a plaintiff must plausibly allege that the conspiracy was motivated by animus against a particular constitutionally protected class. Volunteer

- 19 -

Med. Clinic, Inc. v. Operation Rescue, 948 F.2d 218, 224 (6th Cir.
1991). Classes that are entitled to § 1985 protection are those
"'discrete and insular' minorities that receive special protection
under the Equal Protection Clause because of inherent personal
characteristics." Id.

Ms. Stark argues that she has met the animus requirement
because the conspiracy against her was motivated by animus against
her personally, and class of one claims are cognizable under the
Equal Protection Clause. Although class of one claims are sometimes
cognizable under the Equal Protection Clause, see Warren v. City
of Athens, Ohio, 411 F.3d 697, 710 (6th Cir. 2005), a class of one
is not the kind of group that receives "special protection" under
the Equal Protection Clause. Volunteer Med. Clinic, 948 F.2d at
224. For this reason, the Sixth Circuit has rejected the notion a
plaintiff may plead a § 1985's conspiracy by alleging animus
against the plaintiff as a class of one. Royal Oak, 205 F. App'x
at 399. It is recommended that the motion to dismiss be granted as
to Ms. Stark's § 1983 and § 1985 conspiracy claims, with the
exception of the two alleged conspiracies identified in section
II-H below.

## G.    § 1983 Claims Against Ervin, Cordero, Roach, and Crowe

The city defendants next argue Ms. Stark has not plausibly
stated a § 1983 claim against Ervin, Cordero, Roach, or Crowe for
any of their individual actions. To state a viable claim under 42

U.S.C. § 1983, a plaintiff "must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995)). Ms. Stark claims she has alleged deprivations of her rights under four provisions of the Constitution: (1) the substantive component of the Fourteenth Amendment's Due Process Clause, (2) the procedural component of the Fourteenth Amendment's Due Process Clause, (3) the First Amendment, as incorporated to the states through the Fourteenth Amendment's Due Process Clause, and (4) the Fourteenth Amendment's Equal Protection Clause.

    1.   Substantive Due Process

Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The clause has both substantive and procedural components. EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012). The substantive component of the Due Process Clause establishes that certain state governmental deprivations of "'life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" Range v. Douglas, 763 F.3d 573, 588 (6th Cir. 2014) (quoting Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir. 1992)).

Substantive due process protects "a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" Id. (quoting Bell v. Ohio State Univ., 351 F.3d 240, 249-50 (6th Cir. 2003)). "[T]he list of fundamental interests is short and includes: the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment." Langston v. Charter Twp. of Redford, 623 F. App'x 749, 759 (6th Cir. 2015) (citing Washington v. Glucksberg, 521 U.S. 702, 720 (1997)). Absent certain exceptional circumstances, "the Due Process Clause does not require the State to provide its citizens with particular protective services[.]" DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989); see also Zuniga v. Cooper, No. 14-CV-2870-JDT-tmp, 2015 WL 6440766, at *6 (W.D. Tenn. Sept. 17, 2015), report and recommendation adopted, 2015 WL 6440836 (W.D. Tenn. Oct. 21, 2015).

Ms. Stark has not identified a fundamental interest protected by substantive due process. To the extent that she is claiming there is a federal substantive due process right to "access to redress under domestic violence law" that Ervin, Cordero, Roach,

- 22 -

or Crowe may have violated, she fails to state a claim because the
Due Process Clause does not require states to provide affirmative
protective services to its citizens. DeShaney, 489 U.S. at 196.

However, even absent the deprivation of a fundamental right,
substantive due process is violated by government action that
"shocks the conscience." Range, 763 F.3d at 588. This is a
demanding standard. "When the conduct in question has been taken
by an executive officer, the action violates substantive due
process only if it can be characterized as 'arbitrary, or
conscience shocking, in a constitutional sense.'" Handy-Clay v.
City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012) (quoting Cnty.
of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)) (citation and
internal quotation marks omitted). "Moreover, this
characterization applies to only the most egregious official
conduct, conduct that is so brutal and offensive that it [does]
not comport with traditional ideas of fair play and decency." Id.
at 547-48 (internal citations and quotations omitted). "The
conscience-shocking limit on substantive due process claims serves
to keep the doctrine from expanding to cover administrative
incompetence or irresponsibility." Brown v. Detroit Pub. Sch.
Cmty. Dist., 763 F. App'x 497, 504 (6th Cir. 2019) (citing Cty. of
Sacramento v. Lewis, 523 U.S. 833, 848 (1998)).

Here, these officers' alleged conduct simply does not meet
the shocks-the-conscience standard. While it is irresponsible and

- 23 -

inappropriate to try to file a police report of domestic violence in a way that prevents the police from investigating it, or to not fully investigate a domestic violence allegation, such conduct is not the kind of egregiously wrong behavior that violates the right to be free of government action that shocks the conscience under governing precedent. Ms. Stark has not plausibly stated a substantive due process violation by Ervin, Cordero, Roach, or Crowe.

### 2.    Procedural Due Process

"[T]he Due Process Clause provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures." Chandler v. Vill. of Chagrin Falls, 296 F. App'x 463, 468 (6th Cir. 2008) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). To state a procedural due process claim, Ms. Stark must plausibly allege that: (1) she has a property interest protected by the Due Process Clause; (2) she was deprived of this property interest; and (3) the state did not afford her adequate pre-deprivation procedural rights. Id. at 469 (citing Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999)).

Whether Ms. Stark has alleged a protected property interest is under dispute. Some historical context illuminates the dispute. Fifty years ago, the Court recognized "[m]uch of the existing wealth in this country takes the form of rights that do not fall

within traditional common-law concepts of property." Goldberg v. Kelly, 397 U.S. 254, 263 n.8 (1970). Then, as now, things like professional licenses, Social Security benefits, and other forms of entitlements were an important part of the property owned by most Americans. Id. Because of the importance of such non-traditional property rights, the Court has acknowledged that the denial of certain government-given benefits or rights may only take place after a constitutionally adequate process. Id. at 271.

This expansion of the scope of the Due Process Clause is limited. It extends only to those interests that are closely analogous to property – those interests one has a "legitimate claim of entitlement to[.]" Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Whether one has a sufficient claim of entitlement to a particular interest is determined by the body of law that creates the right, typically state law. See Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005).

Rights supposedly granted to victims by the criminal law do not fit comfortably into this framework. While state statutes sometimes describe police obligations in mandatory terms, common sense dictates that law enforcement must have at least some discretion in how to allocate its limited resources. Castle Rock, 545 U.S. at 761 (citing Chicago v. Morales, 527 U.S. 41, 62). Furthermore, it is not clear that the right to have the police enforce or not enforce the criminal law against someone else, even

if present in a state statute, can ever be fairly described as being analogous to property. Id. at 766. Courts have thus been skeptical of procedural due process claims by victims based on state criminal law.

The Supreme Court's decision in Castle Rock illustrates how deep that skepticism runs. In Castle Rock, the Colorado legislature passed a law requiring that police officers "shall use every reasonable means to enforce a restraining order." Id. at 759 (quoting Colo. Rev. Stat. § 18-6-803.5(3)). A mother obtained a restraining order against her abusive husband forbidding him from coming within 100 feet of her children. Id. 750-751. The husband violated the order and kidnapped the children from the mother's home. Id. at 753. Over the next ten hours, the mother pleaded with the police repeatedly to search for her kidnapped children, fearing for their safety. Id. at 753-54. The mother even went so far as to show the police a physical copy of the court's restraining order. Id. The police did nothing and the husband murdered the children. Id. at 754. The mother sued, alleging a procedural due process claim. Id. The Supreme Court held that, assuming without deciding that there could ever be a procedural due process property right in the enforcement of the criminal law (and the Court expressed doubt about that), the mother needed to show a clear statement in state law that demonstrated the existence of an enforceable right. Id. at 758-68. The Court decided that the Colorado legislature's

- 26 -

instruction that the police "shall use every reasonable means to enforce a restraining order" was not a clear statement that the police had an obligation to enforce restraining orders. Id. Applying Castle Rock, the Sixth Circuit has held that Tennessee's domestic violence law on restraining orders does not create any obligations on law enforcement that are enforceable by victims through the Due Process Clause. Hudson v. Hudson, 475 F.3d 741, 746 (6th Cir. 2007).

Ms. Stark argues that she was denied the right to a report guaranteed under Tennessee domestic violence law. This appears to be a reference to T.C.A. § 36-3-619(e) and (f), which provide:

> (e) When a law enforcement officer investigates an allegation that domestic abuse occurred, the officer shall make a complete report and file the report with the officer's supervisor in a manner that will permit data on domestic abuse cases to be compiled. If a law enforcement officer decides not to make an arrest or decides to arrest two (2) or more parties, the officer shall include in the report the grounds for not arresting anyone or for arresting two (2) or more parties.

> (f) Every month, the officer's supervisor shall forward the compiled data on domestic abuse cases to the administrative director of the courts.

T.C.A. § 36-3-619(e)-(f). There is little reason to think that these provisions create an enforceable right on the part of a victim of domestic violence to have a report filed in their case. The focus of the statutory text is on data collection. This suggests the function of the reporting requirement is to allow state officials to monitor how police departments handle domestic

violence claims, not to require specific steps to be taken in any particular case. Given that binding authority has established that statutes with much stronger language did not create enforceable rights under the Due Process Clause, the undersigned cannot conclude otherwise here.

Ms. Stark also raises another procedural due process argument – that the police should have given her some opportunity to be heard before listing her as a suspect in a report. But there is no procedural due process right to have an investigation conducted in a particular way. Garner v. Harrod, 656 F. App'x 755, 761 (6th Cir. 2016). Ms. Stark has not plausibly stated a procedural due process violation by Ervin, Cordero, Roach, or Crowe.

### 3.  First Amendment

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. However, "[a] citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999). As a result, it does not violate the First Amendment's Petition Clause for the police to ignore a complaint. See Franklin v. Fisher, No. 16-6464, 2017 WL 4404624, at *3 (6th Cir. May 15, 2017).

Neither Ervin, Cordero, Roach, or Crowe are alleged to have done anything that actually prevented Ms. Stark from communicating

with the MPD. Rather, these defendants are alleged to have either not investigated Ms. Stark's claims or taken steps to discourage other officers from investigating Ms. Stark's claims. This does not violate the First Amendment.

### 4.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" Ctr. For Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) (quoting Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich., 470 F.3d 286, 299 (6th Cir. 2006)).

Ms. Stark claims that she has alleged a class of one equal protection claim. "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." Warren v. City of Athens, Ohio, 411 F.3d 697, 710 (6th Cir. 2005). Such claims are cognizable because "'the purpose of the equal protection clause of the Fourteenth Amendment is to secure every

person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (quoting Sioux City Bridge Co. v. Dakota Cty., Neb., 260 U.S. 441, 445 (1923)). A class of one plaintiff may demonstrate the absence of a rational basis in one of two ways: (1) by "negating every conceivable basis which might support the government action" challenged or (2) "by showing that the challenged action was motivated by animus or ill-will." Cahoo v. SAS Analytics Inc., 912 F.3d 887, 905 (6th Cir. 2019) (quoting TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio, 430 F.3d 783, 788 (6th Cir. 2005)).

Ms. Stark has not plausibly alleged facts that would permit an inference that she was treated differently than other similarly situated people by Ervin, Cordero, Roach, or Crowe. Ms. Stark argues this is plausibly alleged by Ervin's attempt to file a police report about the incident as a memo. But even if this is true, Ms. Stark must still plausibly allege that she was harmed in some way by this conduct. Ms. Stark has not done so. The memo was refiled as a report, and a police officer was assigned to investigate the June 17 assault. Regardless of whether Ervin was motivated by improper animus when he filed the memo, Ms. Stark has not shown this affected how she was treated by the government.

Ms. Stark further claims that she was treated differently than other domestic violence victims because the police did not "appropriately" investigate her allegations of domestic violence. (Compl., ECF No. 1, 15-16 ¶ 75.) But Ms. Stark has not alleged facts that show "a similarly situated victim . . . would enjoy a higher level of attention from law enforcement." <u>Bertovich v. Vill. of Valley View, Ohio</u>, 431 F. App'x 455, 458 (6th Cir. 2011). There was some investigation into Ms. Stark's allegations: Ms. Stark met with the police officers tasked with investigating her case multiple times and those police officers also interviewed Mr. Stark. Absent facts that would tend to show that a similarly situated victim would have had his or her case investigated more, Ms. Stark cannot show that she was treated differently than any other domestic violence victim. It is recommended that the motion to dismiss with respect to Ms. Stark's § 1983 claims against Ervin, Cordero, Roach, and Crowe for those defendants' individual actions be granted.

**H.    § 1983 Claims Against Mr. Stark**

    1.    <u>State Action</u>

The city defendants assert that none of the allegations against Mr. Stark involve actions taken under color of state law. "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor

could not have behaved as he did without the authority of his office." Waters v. City of Morristown, TN, 242 F.3d 353, 359 (6th Cir. 2001). "Acts of police officers in the ambit of their personal, private pursuits fall outside 42 U.S.C. § 1983." Morris v. City of Detroit, Michigan, No. 19-1386, 2019 WL 5205986, at *2 (6th Cir. Oct. 16, 2019) (quoting Stengel v. Belcher, 522 F.2d 438, 440 (6th Cir. 1975). "'It is the nature of the act performed [that] determines whether the officer has acted under color of law.'" Id. Whether a police officer's action is within the scope of his or her role as a state actor is determined by the totality of the circumstances. Id.

Under limited circumstances, a private person may also be considered to have acted under color of state law pursuant to § 1983. "A private party qualifies as a state actor if two conditions are met: '(1) the deprivation complained of was caused by the exercise of some right or privilege created by the State and (2) the offending party acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" Kerns v. Chesapeake Expl., LLC, 762 F. App'x 289, 294 (6th Cir.) (quoting Tahfs, 316 F.3d at 590). "'Generally, a private party's mere use of the State's dispute resolution machinery, without the overt, significant assistance of state officials, cannot be considered state action.'" Id. However, a private party that conspires with a state actor to deprive

constitutional rights may be held liable as if they were a state actor. Harcz v. Boucher, 763 F. App'x 536, 540 (6th Cir. 2019). As discussed above, to allege a § 1983 conspiracy, a plaintiff must allege (1) a single plan, (2) a shared unconstitutional objective, and (3) an overt act. Arsan, 2019 WL 3494330 at *10.

The complaint alleges three sets of actions by Mr. Stark that are purportedly constitutional violations. First, Mr. Stark worked with Ervin to file a report about the June 17 assault as a memo. Second, Mr. Stark sought to have Ms. Stark enjoined from criticizing him or the MPD. Third, Mr. Stark induced two homicide detectives to refuse to testify in a case Ms. Stark was handling.

Mr. Stark's actions as a litigant in the divorce proceeding are not state action because private parties are not transformed into state actors by making use of the court system. Kerns, 762 F. App'x at 294. However, Mr. Stark's actions in conjunction with other police officers do constitute state action. Mr. Stark "could not have behaved as he did without the authority of his office[.]" Waters, 242 F.3d at 359. Furthermore, the complaint plausibly alleges that Mr. Stark conspired with Ervin and the two homicide detectives, who are unambiguously state actors.[8] The complaint's

---

[8]This conclusion is not inconsistent with the Report and Recommendation's earlier conclusion that the complaint's broader conspiracy allegations – which claim that various combinations of about a dozen defendants, including the Mayor and the City itself, conspired to violate Ms. Stark's constitutional rights — are not plausibly alleged. Ms. Stark has alleged specific facts that

allegations that Mr. Stark conspired with Ervin are specific and
involve a single plan (filing a writeup on the June 17 assault as
a memo), a single objective (to prevent Ms. Stark's assault
allegations from being investigated), and an overt act (filing the
memo). This means Mr. Stark's actions as part of the conspiracy
with Ervin satisfy the state action requirement for a § 1983 claim.
Similarly, the complaint's allegations that Mr. Stark induced two
homicide detectives to refuse to testify in a hearing Ms. Stark
was handling involve a single plan (the detectives not testifying),
a single objective (harming Ms. Stark), and an overt act (the
police officers refusing to testify). Mr. Stark's actions as part
of both conspiracies thus satisfy the state action requirement.

  2.  <u>Deprivation of a Federally Protected Right</u>

    The city defendants next argue that Ms. Stark has not
plausibly alleged that Mr. Stark deprived her of a federally
protected right. As discussed above, Mr. Stark's alleged
conspiracy with Ervin to prevent a police report from being filed
about the June 17 assault did not result in a constitutional
violation. The police still investigated the June 17 assault and
there is no plausible allegation that Ms. Stark was harmed because
of the initial filing of a report of the incident as a memo. Ms.

---

support the existence of two conspiracies involving Mr. Stark. Ms.
Stark's broader conspiracy allegations are not similarly
supported.

Stark has thus not shown deprivation of a federally protected right with regard to Mr. Stark's conspiracy with Ervin.

The complaint's allegations that Mr. Stark induced MPD homicide detectives to refused to testify in a hearing Ms. Stark was handling implicate Ms. Stark's First Amendment right to be free of retaliation for protected speech and Ms. Stark's equal protection rights.[9] To establish a First Amendment retaliation claim, a plaintiff must show that (1) plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated by the plaintiff's protected conduct. Buddenberg v. Weisdack, 939 F.3d 732, 739 (6th Cir. 2019); see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 372 (6th Cir. 2011) ("Although much of our First Amendment retaliation jurisprudence addresses claims by public employees and prisoners, the same legal framework applies where, as here, private parties challenge governmental action.").

---

[9]These allegations do not implicate Ms. Stark's right to be free of government action that shocks the conscience because when a claim falls within the scope of a specific constitutional protection, whether the claim prevails is determined by the law governing the more specific right, not the more general protections of substantive due process. Handy-Clay, 695 F.3d at 547.

Ms. Stark has satisfied the first prong of this test. Ms. Stark's Facebook post criticizing the MPD and her repeated communications with various people about her husband's and the MPD's wrongful conduct are political speech, and political speech is protected by the First Amendment.[10] See, e.g., Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 339 (2010).

Ms. Stark has also satisfied the adverse action requirement. "'The term 'adverse action' has traditionally referred to actions such as discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote.'" Dye v. Office of the Racing Comm'n, 702 F.3d 286, 303 (6th Cir. 2012) (quoting Handy-Clay, 695 F.3d at 545). However, because the government generally lacks a legitimate purpose in retaliating against speech, an adverse action's effect on a plaintiff "need not be great in order to be

---

[10]This is true regardless of whether the state court had the authority to enjoin Ms. Stark's speech or if Ms. Stark's speech was in violation of the state court's orders. The distinction between protected speech and unprotected speech is not truly a binary; speech that one government actor may legitimately regulate for one reason might not be regulatable by another government entity acting for a different reason. See R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 383-85 (1992) ("The proposition that a particular instance of speech can be proscribable on the basis of one feature (e.g., obscenity) but not on the basis of another (e.g., opposition to the city government) is commonplace and has found application in many contexts."). Even if the state court could enjoin Ms. Stark from criticizing Mr. Stark or the MPD to further its interest in administering orderly divorce proceedings, MPD homicide detectives could not lawfully act against Ms. Stark to punish her for criticizing Mr. Stark or the MPD.

actionable." Mezibov v. Allen, 411 F.3d 712, 721 (6th Cir. 2005) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999)). What constitutes an adverse action depends on the circumstances of the claim. Dye, 702 F.3d at 303 ("[W]e are required to tailor our analysis under the adverse action prong to the circumstances of this specific retaliation claim.") (internal alterations omitted) (quoting Mezibov, 411 F.3d at 721).

Mr. Stark's alleged sabotage of Ms. Stark's case closely resembles a constructive discharge because it rendered Ms. Stark unable to do her job. A prosecutor cannot effectively handle cases if police officers refuse to work with her. Constructive discharge is traditionally considered an adverse action. Buddenberg, 939 F.3d at 740.

The city defendants make two arguments that Ms. Stark has not alleged an adverse action. First, they argue that this allegation against Mr. Stark is conclusory. Second, they argue that because Ms. Stark was not a party to the murder case, she has no judicially cognizable rights stemming from Mr. Stark's alleged interference in the case.

It is true that Ms. Stark has not alleged much specifically about Mr. Stark's role in preventing these two detectives from testifying. But Ms. Stark has alleged enough to "nudge[] her claim . . . across the line from conceivable to plausible." Johnson v. CoreCivic, Inc., No. 18-1051-STA-egb, 2018 WL 5798534, at *7 (W.D.

Tenn. Nov. 5, 2018) (internal alterations omitted) (quoting
Twombly, 550 U.S. at 570). Mr. Stark is a homicide detective, and
both of the officers who refused to testify in the hearing Ms.
Stark was handling were in the MPD's homicide division.
Furthermore, the fact that both detectives refused to testify at
roughly the same time that the state court issued its injunction
prohibiting Ms. Stark from criticizing the MPD plausibly suggests
Mr. Stark's involvement. See Heyne, 655 F.3d at 563 (circumstantial
evidence may plausibly suggest the existence of a conspiracy).
While Ms. Stark's allegations lack details, the court is required
at this Rule 12(b)(6) stage to view the complaint's allegations in
the light most favorable to her. Under this liberal standard, the
undersigned concludes her allegations meet the minimal requirement
of plausibility pleading.

The city defendants' argument that Ms. Stark has not stated
a claim because she was not a party to the murder case does not
appear to be based in caselaw governing retaliation cases. The
city defendants cite to Doe v. Briley, a case about standing in
class actions, to support their argument. Doe v. Briley, No. 16-
6823, 2017 WL 8219087, at *1 (6th Cir. Dec. 27, 2017). The city
defendants further argue that Ms. Stark has no constitutional right
to have someone else be criminally prosecuted, citing to another
case about standing, Linda R.S. v. Richard D., 410 U.S. 614, 619
(1973). This argument overlooks the fact that the actions taken

against Ms. Stark were allegedly in retaliation for her First
Amendment protected activity. "In a First Amendment retaliation
claim, 'retaliation for the exercise of constitutional rights is
itself a violation of the Constitution.'" Hill v. Lappin, 630 F.3d
468, 473 (6th Cir. 2010) (quoting Thaddeus-X, 175 F.3d at 394).
Ms. Stark has plausibly alleged an adverse action.

This leaves the causal connection requirement. "Temporal
proximity between the protected activity and the adverse action
can support a causal connection." Buddenberg, 939 F.3d at 741.
Furthermore, causation is generally not a question suited to
resolution at the motion to dismiss stage. Id. Here, the fact both
homicide detectives refused to testify in a hearing Ms. Stark was
handling at roughly the same time that the state divorce court
enjoined Ms. Stark from criticizing her husband plausibly suggests
causation between Ms. Stark's past criticism of her husband and
the MPD and the refusal to testify. Ms. Stark has thus plausibly
stated a First Amendment retaliation claim.

3.   Qualified Immunity

The city defendants next argue that Mr. Stark is entitled to
qualified immunity. "[A]lthough an officer's entitlement to
qualified immunity is a threshold question to be resolved at the
earliest possible point, that point is usually summary judgment
and not dismissal under Rule 12." Cahoo v. SAS Analytics Inc., 912
F.3d 887, 899 (6th Cir. 2019). A district court's role in

evaluating an assertion of qualified immunity at the motion to dismiss stage is thus limited to evaluating whether it is plausible that an official's acts violated a clearly established constitutional right. Id.

The right to not be retaliated against for protected speech is clearly established. Buddenberg, 939 F.3d at 741. At this point, Mr. Stark is not entitled to qualified immunity. It is recommended that the motion to dismiss on this ground be denied as to Mr. Stark's alleged inducement of two MPD detectives to not testify in a hearing handled by Ms. Stark. It is further recommended that the remaining federal claims against Mr. Stark be dismissed for the reasons discussed in subsections 1 and 2.

## I.    § 1983 Claims Against McMullen and Saleem

The city defendants contend Ms. Stark has not stated a § 1983 claim against McMullen or Saleem. There is no serious argument that filing a motion to quash certain discovery implicates the opposing party's substantive or procedural due process rights. Likewise, to prove a First Amendment retaliation claim or an equal protection claim, Ms. Stark would need to allege facts that give rise to a plausible inference that the City Attorney's office would have acted any differently had another litigant sought similar discovery or acted out of malice. Ms. Stark has not alleged such facts. The ordinary function of the City Attorney's office is to represent the city, which involves opposing discovery requests the

city believes are burdensome. Deposing five police officers and
seeking documents about an investigation imposes obvious burdens
on the city. Though it may be that Ms. Stark is entitled to such
discovery, parties often disagree about the appropriate scope of
discovery in civil cases. Ms. Stark has not identified any similar
discovery request the City did not oppose. Likewise, for it to be
plausible that McMullen and Saleem acted out of malice, Ms. Stark
would have to allege something more than that these defendants
opposed a discovery request that was burdensome for their client.
It is recommended that the motion to dismiss with respect to Ms.
Stark's § 1983 claims against McMullen and Saleem for those
defendants' individual actions be granted.

**J.    § 1983 Claims Against John Does 1 and 2**

        The alleged conduct attributed to John Does 1 and 2 –
contacting Ms. Stark's supervisor at the District Attorney's
office to ask the supervisor to discourage Ms. Stark from bringing
charges – only meaningfully implicates her First Amendment right
to be free of retaliation. However, John Does 1 and 2 are alleged
to have contacted Ms. Stark's supervisor before Ms. Stark reported
her husband's abuse or criticized the MPD. Ms. Stark has thus not
plausibly alleged causation between protected conduct and an
adverse action taken against her by John Does 1 and 2. It is
recommended that the motion to dismiss on this ground be granted.

**K.    § 1983 Claims Against Mayor Strickland and Rallings**

The complaint contains no specific allegations of actions taken by either Rallings or Mayor Strickland that might plausibly suggest that either defendant individually acted in a fashion that violated Ms. Stark's constitutional rights. Indeed, the complaint contains no specific allegations of any actions taken by Rallings. It is possible that at the points in the complaint where Ms. Stark references the MPD, she intends to allege specific actions by Rallings. For example, in her briefing Ms. Stark says Rallings made the decision to ban her from police property, while the complaint says the MPD made that decision. But the undersigned is not free to assume that references to the MPD in the complaint are describing actions taken by Rallings. Ms. Stark has the obligation to state her claims against each defendant in a form that identifies the specific conduct attributable to each defendant. Ms. Stark has only identified Mayor Strickland and Rallings's failure to train and failure to supervise as a basis for liability.

Under certain circumstances, a government official's deliberate indifference to another government actor's violations of someone's constitutional rights itself violates the Constitution. See Connick v. Thompson, 563 U.S. 51, 61 (2011). A sufficiently serious failure to train or supervise may constitute deliberate indifference. Id. "To establish 'a failure to train or supervise claim,' a plaintiff must sufficiently plead that '(1) the training or supervision was inadequate for the tasks performed;

(2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" Taylor v. City of Brownsville, No. 1:18-CV-2445-JDB-egb, 2018 WL 5850189, at *3 (W.D. Tenn. Nov. 8, 2018) (quoting Regets v. City of Plymouth, 568 F. App'x 380, 394 (6th Cir. 2014).

Ms. Stark has not plausibly alleged any of the elements of a failure to train or failure to supervise claim. Ms. Stark has not identified any way in which either Mayor Strickland or Rallings inadequately trained or supervised MPD officers, has not alleged any facts that suggest that Mayor Strickland or Rallings was deliberately indifferent, and has not alleged any facts suggesting that she was injured as a result of a failure to train or failure to supervise. It is recommended that the motion to dismiss on this ground be granted.

**L.  Municipal Liability for § 1983 Claims**

"'Under § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions.'" D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014) (internal alterations omitted) (quoting Connick v. Thompson, 563 U.S. 51, 60 (2011)). As a result, "a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy

can be said to have 'caused' one of its employees to violate the plaintiff's constitutional rights." Id. (internal alterations omitted) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692 (1978)). A plaintiff may show a municipality's liability for its official policy "by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013).

Most of Ms. Stark's allegations of municipal liability appear to be based on a *respondeat superior* theory or do not adequately allege any official policy by the City. Ms. Stark also alleges that the City had a "culture of civil rights abuse," but does not allege any specifics that would give rise to a plausible inference such a culture existed and was the moving force of a constitutional violation. (ECF No. 1 at 24 ¶ 113.) Similarly, Ms. Stark alleges that the MPD failed to adequately train and supervise its officers, but does not allege any specific facts that would make such a conclusion plausible.

There is, however, one notable exception. Ms. Stark also alleges that "[o]n or about February 7, 2019, MPD banned Plaintiff

- 44 -

from police occupied property including Tillman Precinct where Plaintiff was assigned. Per the MPD ban placed against Plaintiff, Plaintiff would only be allowed to obtain her personal property from her office as MPD Tillman Precinct under a police escort." (ECF No. 1 at 14 ¶ 66.) This is an allegation of an official policy that was implemented on a citywide basis against Ms. Stark specifically. If this action violated the Constitution, the City may be held liable. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (holding that even a single decision properly attributable to a municipality may give rise to § 1983 liability).

Furthermore, Ms. Stark has plausibly alleged that the police property ban violated her First Amendment rights. As discussed above, to establish a First Amendment retaliation claim, a plaintiff must show (1) protected conduct, (2) an adverse action, and (3) causation between the two. Buddenberg, 939 F.3d at 739. As noted before, Ms. Stark's criticism of the MPD and her husband was protected by the First Amendment. Furthermore, a ban from police property is a serious sanction for a prosecutor – especially a prosecutor who, like Ms. Stark, had an office in a police building. Stark has thus alleged an adverse action. Finally, Ms. Stark's ban from police property happened the same day that the state court enjoined her from criticizing the MPD. This suggests causation between Ms. Stark's criticism of the MPD and the ban. Ms. Stark

has thus plausibly alleged a First Amendment retaliation claim against the City of Memphis.

This leaves the city defendants' argument that Ms. Stark cannot recover punitive damages against the City under § 1983. The Supreme Court has held municipalities are immune from punitive damages under § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Ms. Stark thus cannot recover such damages.

It is recommended that the motion to dismiss be denied as to Ms. Stark's First Amendment retaliation claim against the City, but otherwise granted. It is further recommended that Ms. Stark's claims for punitive damages from the City under § 1983 be dismissed.

**M.    Claims Under the Tennessee Constitution**

The city defendants next argue that Ms. Stark's state constitutional claims should be dismissed. There is no private right of action for damages under the Tennessee Constitution. Williams v. Leatherwood, 258 F. App'x 817, 824 (6th Cir. 2007); Epperson v. City of Humboldt, Tenn., 140 F. Supp. 3d 676, 689 (W.D. Tenn. 2015). Assuming there is a right of action for injunctive relief under the Tennessee Constitution, see Planned Parenthood of Middle Tennessee v. Sundquist, 38 S.W.3d 1, 25 (Tenn. 2000), there is no apparent reason why Ms. Stark would be entitled to an injunction compelling the city defendants to refrain from listing

her as a suspect in the June 17 assault based on the Tennessee Constitution's protections for free speech.

Ms. Stark argues that the Tennessee Supreme Court recognized a right of action for damages claims for violations of the state constitution in City of Knoxville v. Entm't Res., LLC, 166 S.W.3d 650, 659 (Tenn. 2005). But that was a case about both the state and federal constitutions, and the money damage claims were federal claims pled through 42 U.S.C. § 1983. See City of Knoxville v. Entm't Res., LLC, No. E200201143COAR3CV, 2003 WL 22762195, at *8 (Tenn. Ct. App. Nov. 21, 2003), aff'd on other grounds, 166 S.W.3d 650 (Tenn. 2005). It is recommended that the motion to dismiss on this ground be granted.

**N.    State Tort Law Claims Against the City**

The city defendants next argue that Ms. Stark's state tort law claims against the City of Memphis should be dismissed because the City enjoys absolute immunity from suit under the Tennessee Government Tort Liability Act ("TGTLA"). As a general matter, under the TGTLA "governmental entities" enjoy absolute immunity from suit. T.C.A. § 29-20-201(a). "[M]unicipalities" are a type of governmental entity protected by the TGTLA. T.C.A. § 29-20-102(3)(A). Though there are some exceptions to the TGTLA, see T.C.A. § 29-20-205 (removing immunity for certain negligence suits), Ms. Stark is not pursing any negligence claims against the City and has not identified an applicable exception to the TGTLA's

general grant of immunity. As such, it is recommended that the
motion to dismiss on this ground be granted.

O.    **Intentional Infliction of Emotional Distress**

The city defendants move to dismiss Ms. Stark's intentional
infliction of emotional distress claims against Mayor Strickland,
Rallings, McMullen, and Mr. Stark.[11] The city defendants argue Ms.
Stark has not alleged facts sufficient to establish intentional or
reckless outrageous conduct.

"The elements of an intentional infliction of emotional
distress claim are that the defendant's conduct was (1) intentional
or reckless, (2) so outrageous that it is not tolerated by
civilized society, and (3) resulted in serious mental injury to
the plaintiff." Rogers v. Louisville Land Co., 367 S.W.3d 196, 205
(Tenn. 2012). Tennessee has adopted the Restatement (Second) of
Torts' formulation of the outrageous conduct requirement, which
provides that:

> The cases thus far decided have found liability only
> where the defendant's conduct has been extreme and
> outrageous. It has not been enough that the defendant
> has acted with an intent which is tortious or even
> criminal, or that he has intended to inflict emotional
> distress, or even that his conduct has been
> characterized by 'malice,' or a degree of aggravation

---

[11]Ms. Stark has also brought intentional infliction of emotional
distress claims against city defendants Crowe and Saleem. The city
defendants have not moved to dismiss those claims. However, because
the arguments raised by the city defendants would apply equally to
Crowe and Saleem, the undersigned will consider whether the
intentional infliction of emotional distress claims against those
defendants should be dismissed.

which would entitle the plaintiff to punitive damages
for another tort. Liability has been found only where
the conduct has been so outrageous in character, and so
extreme in degree, as to go beyond all bounds of decency,
and to be regarded as atrocious and utterly intolerable
in a civilized community. Generally, the case is one in
which the recitation of the facts to an average member
of the community would arouse his resentment against the
actor, and lead him to exclaim, 'Outrageous!'

Leach v. Taylor, 124 S.W.3d 87, 92 (Tenn. 2004) (quoting Bain v.
Wells, 936 S.W.2d 618, 623 (Tenn. 1997). "The outrageous conduct
requirement is a high standard which has consistently been regarded
as a significant limitation on recovery." Doe 1 ex rel. Doe 1 v.
Roman Catholic Diocese of Nashville, 154 S.W.3d 22, 39 (Tenn.
2005).

Mayor Strickland's alleged conduct – forwarding a letter to
two government agencies handling law enforcement matters – clearly
does not rise to this standard. Similarly, McMullen and Saleem's
alleged conduct – filing a motion to quash certain depositions –
also does not rise to this standard. Crowe's alleged conduct – not
changing Ms. Stark's designation as a suspect in a police report
– does not rise to this standard either. As discussed earlier, the
complaint does not discuss any specific conduct by Rallings.

Mr. Stark's alleged conduct is a closer call. Mr. Stark is
alleged to have persuaded two MPD homicide detectives to refuse to
testify at a key hearing in a murder case if Ms. Stark was handling
the hearing. According to the complaint, Mr. Stark's goal in doing
so was to punish his wife for reporting his physical abuse. If

true — and the court is obliged to consider this allegation to be true for the instant motion — this would be a serious abuse of the public trust. Such abuse of a position of trust is sufficiently outrageous conduct for an intentional infliction of emotional distress claim. Cf. Doe v. Rhodes Coll., No. 2:16-CV-2308-JTF-tmp, 2016 WL 11612213, at *7 (W.D. Tenn. Oct. 26, 2016) (former student at college stated intentional infliction of emotional distress claim against professor who allegedly falsely accused her of cheating on exams after rejecting sexual advances because the professor's abuse of a position of trust made the retaliation and sexual harassment allegations particularly outrageous). It is recommended that the motion to dismiss on this ground be granted as to Mayor Strickland, McMullen, Crowe, Saleem, and Rallings, and denied as to Mr. Stark.

**P.    Interference with Business Relationships**

The city defendants next move to dismiss Ms. Stark's interference with business relationships claims against Mayor Strickland, Rallings, and Mr. Stark. To state a claim for interference with business relationships, a plaintiff must allege:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious

interference.

Moore-Pennoyer v. State, 515 S.W.3d 271, 281 (Tenn. 2017) (quoting Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002)). This first element may be satisfied by an at-will employment relationship. Forrester v. Stockstill, 869 S.W.2d 328, 330 (Tenn. 1994); see also Aldridge v. City of Memphis, 404 F. App'x 29, 43 (6th Cir. 2010) ("Tennessee recognizes a cause of action for tortious interference with another person's at-will employment.").[12]

The complaint contains no allegations of any specific actions taken by Rallings. The complaint also does not allege that Mayor Strickland took any action with the intent to cause the termination of Ms. Stark's employment relationship with the District Attorney's office. Ms. Stark has thus not plausibly stated a claim against either of those defendants. However, Ms. Stark's allegations against her husband appear to meet the elements of this tort.

The city defendants argue Ms. Stark cannot satisfy the first element of this tort because public employees do not have protected contracts. The city defendants cite two cases in support of their claim, Bush v. Johnson, 607 F. Supp. 96, 99 (E.D. Tenn. 1985) and

---

[12]Under Tennessee law, tortious interference with business relationships includes interference with at-will employment relationships — the two torts are not separate. Cf. Moore-Pennoyer, 515 S.W.3d at 281.

Blackwell v. Quarterly Cty. Court of Shelby Cty., 622 S.W.2d 535,
539 (Tenn. 1981). Bush stands for the proposition that public
employees in Tennessee are generally at-will employees. Bush, 607
F. Supp. at 99. If the defendants are arguing that because Ms.
Stark was an at-will employee she cannot state a claim for
interference with business relationships, Forrester clearly
precludes that argument. 869 S.W.2d at 330. The next cited case,
Blackwell, is about the Contracts Clause of the federal
constitution and its state counterpart. 622 S.W.2d at 539. Ms.
Stark is not alleging any claims under either of those
constitutional provisions, so the relevance of this authority is
somewhat unclear. To the extent the city defendants are arguing
that there is some special quality about public employment that
precludes an interference with business relationships claim, the
undersigned has not been able to locate authority to that effect,
and recent authority by the Tennessee Supreme Court has discussed
an intentional interference with business relations claim by a
public employee without noting any special prohibition on such
claims. Moore-Pennoyer, 515 S.W.3d 271.

The city defendants further argue that because Ms. Stark
voluntarily resigned, she was not discharged and cannot state a
claim for intentional interference with business relations. Since
Forrester, the Tennessee Supreme Court has clarified that
interference with an at-will employment relationship is a type of

- 52 -

interference with business relationships claim, and discharge is
not an element of an interference with business relationships
claim. Moore-Pennoyer, 515 S.W.3d at 281. A broad array of conduct
may give rise to an intentional interference with business
relations claim, including threats of violence or malicious
prosecution. Forrester, 869 S.W.2d at 333. It would be an unduly
restrictive reading of the Tennessee Supreme Court's precedent to
hold that Ms. Stark's resignation on ethical grounds after
interference with her cases does not support an interference with
business relationships claim. It is recommended that the motion to
dismiss on this ground be granted as to Mayor Strickland and
Rallings, and denied as to Mr. Stark.

**Q.   False Light Invasion of Privacy**

The city defendants move to dismiss Ms. Stark's false light
invasion of privacy claims against Rallings.[13] To state a claim for
false light invasion of privacy, a plaintiff must allege: "(1)
publicity, (2) that places the plaintiff in a false light, (3)
that is 'highly offensive to a reasonable person,' and (4) that
the defendant knew of or acted with reckless disregard to

---

[13]Ms. Stark has also brought false light invasion of privacy claims
against city defendants Crowe, Cordero, and John Doe 2. The city
defendants have not moved to dismiss those claims. However, because
the arguments raised by the city defendants would apply equally to
Crowe, Cordero, and John Doe 2 the undersigned considers whether
the false light invasion of privacy claims against those defendants
should be dismissed too.

the 'falsity of the publicized matter and the false light in which
the other would be placed.'" Seaton v. TripAdvisor LLC, 728 F.3d
592, 601 (6th Cir. 2013) (quoting West v. Media Gen. Convergence,
Inc., 53 S.W.3d 640, 643-44 (Tenn. 2001)).

Ms. Stark's argument that the defendants committed this tort
appears to be based on the MPD report listing her as a suspect in
the June 17 assault. But neither Crowe, Cordero, Rallings, nor
John Doe 2 is alleged to have published that report. Rather, these
defendants are alleged to have either not acted to take down the
report or to have engaged in conduct totally unrelated to the
report. Ms. Stark has thus not plausibly alleged that any of these
defendants publicized any matter that placed Ms. Stark in a false
light. It is recommended that Ms. Stark's false light invasion of
privacy claims be dismissed.

### III.  RECOMMENDATION

For the reasons above, it is recommended that the city
defendants' motion to dismiss be granted in part and denied in
part. Specifically, is recommended that all of Ms. Stark's claims
against the city defendants be dismissed except for Ms. Stark's
First Amendment retaliation, interference with business relations,
and intentional infliction of emotional distress claims for money
damages against Mr. Stark and Ms. Stark's First Amendment
retaliation claim for money damages against the City of Memphis.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge


February 18, 2020
Date


**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**