IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| PAMELA DIANE STARK, <br><br> PLAINTIFF, <br><br> v. <br><br> CITY OF MEMPHIS, a Tennessee municipality, and JOE STARK, <br><br> DEFENDANTS. | Case No.: 2:19-cv-02396-JTF-tmp <br><br> **COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, AND TENNESSEE COMMON LAW** <br><br> **JURY TRIAL DEMANDED PURSUANT TO FED. R. CIV. PRO. 38(a) & (b)** |

## SECOND AMENDED COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE JOHN T. FOWLKES, JR.:

Plaintiff Pamela Diane Stark (hereinafter "Plaintiff"), by and through her designated attorneys, for her Second Amended Complaint alleges as follows: follows:

I.

### NATURE OF THE ACTION

1. Officer-involved domestic violence (hereinafter "OIDV") is a national problem, with police officer families having higher rates of domestic violence than non–police officer families. *Rafaqat Cheema, Black and Blue Bloods: Protecting Police Officer Families from Domestic Violence, 54(3) Family Court Review 487 (2016).* Many victims of OIDV do not report their abuse precisely because their abuser is a police officer, whom they fear is in a unique position to protect him/herself from any legal consequences. *Id.* Often, OIDV complaints are not investigated properly in a nonbiased manner. *Id.* Plaintiff, a former Shelby County Assistant

District Attorney believed that she could trust a criminal justice system in which she had worked for well over a decade. Instead, Plaintiff faced many of the same challenges faced by other victims of OIDV, including the ability of the abuser to manipulate the system. Plaintiff was subjected to unconscionable retaliation at the hands of Defendant City of Memphis (hereinafter "City of Memphis") and Defendant Joe Stark (hereinafter "Defendant Stark"), a City of Memphis homicide detective, for utilizing her right to freedom of speech secured by the First and Fourteenth Amendments to both file a police report regarding Defendant Stark and speak out on social media voicing her criticism of the Memphis Police Department (hereinafter "MPD").

2. Defendant Stark's domestic abuse was not only physical and emotional, but Defendant Stark also used his official position and his connections with City of Memphis to interfere with Plaintiff's employment as an Assistant District Attorney with the Shelby County District Attorney General's Office (hereinafter "SCDAG").

3. Defendant Stark, acting without any reasonable justification, retaliated against Plaintiff's exercise of her First Amendment rights to both file a police report regarding and post a social media about the domestic assault and abuse Plaintiff suffered at the hands of Defendant Stark by coordinating and executing a plan with other MPD homicide detectives, Sergeant Gladys Burton (hereinafter "Sergeant Burton") and Detective Frias, to refuse to attend and testify in a first-degree murder case being prosecuted by Plaintiff. Additionally, Defendant Stark used his influence to cause the City of Memphis to ban Plaintiff from all police occupied property including Tillman Precinct where Plaintiff was assigned. Defendant Stark's intentional actions interfered with Plaintiff's ability to conduct business and were intended to and did inflict emotional distress upon Plaintiff.

4. This suit is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983") and 1988 in order to remedy Defendants' actions in causing Plaintiff to be deprived of her constitutional rights secured by the First Amendment of the United States Constitution and under Tennessee common law for the torts of interference with business relations and intentional infliction of emotional distress.

## II.

### SUBJECT MATTER JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under Section 1983 and Section 1988. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) in that the federal claims substantially predominate over the state law claims and the claims are so related that they form part of the same case or controversy.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b), and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III.

### THE PARTIES AND PERSONAL JURISDICTION

7. Plaintiff is an adult resident of Memphis, Shelby County, Tennessee.

8. City of Memphis, is a Tennessee municipality, located in Shelby County, Tennessee, which is recognized by the State of Tennessee as a properly organized and legal municipality, and can be served with process through its Chief Officer, Mayor Jim Strickland, at his office located at 125 North Main Street, Memphis, Tennessee 38103. City of Memphis operates

and maintains the law enforcement agency MPD. At all times hereto, the City and its agents acted under color of state law.

9. Defendant Stark is an adult resident of Shelby County, Tennessee and may be served with process at 397 Enquirer Court #104, Cordova, Tennessee 38018. Defendant Stark is or was at all times relevant to this Complaint, a MPD homicide detective employed with the City of Memphis and acted, by virtue of his position, under color of state law.

IV.

FACTUAL ALLEGATIONS

10. Plaintiff was, at relevant times, employed as an Assistant District Attorney and assigned to the MPD Tillman Precinct as a community prosecutor.

11. Plaintiff was, at relevant times, married to Defendant Stark who was a sergeant assigned to the homicide division of the MPD. Plaintiff and Defendant Stark are now divorced.

12. On June 17, 2018, Plaintiff was assaulted and injured by Defendant Stark at the home located at 673 North McLean Boulevard, Memphis, Tennessee 38107.

13. On or about June 25, 2018, in a misuse his position as a City of Memphis employee and police officer, Defendant Stark had another City of Memphis employee, Officer Ervin, dispatched to MPD's Homicide Bureau located at 170 N. Main, Memphis, Tennessee 38103, and filed a police report concerning the events of June 17, 2018, in an effort to prevent Plaintiff from filing domestic violence charges against Defendant Stark. Within this report, Defendant Stark reported that Plaintiff had been injured during the domestic dispute.

14. Officer Ervin was directed at that time by an unknown high-ranking member of MPD to designate the police report as a "memo" due to MPD's policy, practice, or custom of not investigating "memos."

15. Upon information and belief, on or about June 25, 2018, an unknown high-ranking member of MPD went to the SCDAG and requested and encouraged that Plaintiff's former supervisor, Shelby County Deputy District Attorney Raymond Lepone (hereinafter "DDA Lepone"), keep any mention of the domestic assault and abuse perpetrated by Defendant Stark unofficial.

16. On or about June 26, 2018, MPD's reporting system rejected the "memo" status of the incident reported by Defendant Stark based on mandatory reporting laws due to the injuries sustained by Plaintiff from the domestic assault and abuse perpetrated by Defendant Stark.

17. Despite the June 25, 2018, "memo" indicating that Plaintiff received injuries from the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018, on or about June 26, 2018, MPD fraudulently named Plaintiff as a suspect in the domestic assault investigation.

18. On or about June 27, 2018, an unknown investigator assigned to MPD's Domestic Violence Unit went to DDA Lepone's office to consult him about charges against Plaintiff arising out of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018. DDA Lepone contacted Deputy Chief of Investigative Services Michael Shearin with the MPD and the unknown investigator was removed from the investigation.

19. On or about June 28, 2018, Plaintiff was summoned to DDA Lepone's office for a "wellness check." DDA Lepone encouraged Plaintiff to ensure the domestic violence and abuse that was perpetrated by Defendant Stark on June 17, 2018, remain a "memo" in order to not trigger a criminal investigation against Defendant Stark, which could have implications regarding his ability to effectively testify and prosecute criminal defendants.

20. On or about June 29, 2018, Plaintiff was contacted by Sergeant Daniel Cordero (hereinafter "Sergeant Cordero") of the MPD Domestic Violence Unit.

21. On July 1, 2018, Plaintiff met with Sergeant Cordero and provided an audio-recorded suspect/victim statement pertaining to the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018. At that time, Sergeant Cordero refused to take the names of witnesses, visit the scene of the crime or accept a copy of a photograph detailing Plaintiff's injuries sustained during the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018. However, Sergeant Cordero informed Plaintiff that he believed her statements concerning the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018, and that Defendant Stark had not only refused to give an official statement but also denied being the victim of any crime.

22. Despite Sergeant Cordero's clear indication that Defendant Stark refused to give an official statement and denial of being the victim of any crime, on or about July 9, 2018, Plaintiff was designated as the suspect by MPD and Defendant Stark was designated as the victim of the domestic assault incident. MPD classified the report as "confidential" and all other information was blocked from view except by specifically designated persons.

23. Plaintiff's filing of a police report was a constitutionally protected activity. The designation of Plaintiff as the suspect was intended to prevent the initiation of a criminal investigation against Defendant Stark concerning the domestic assault and abuse perpetrated by him on June 17, 2018.

24. On or about July 9, 2018, Plaintiff contacted Sergeant Cordero and his supervisor at the MPD Domestic Violence Unit, Lieutenant Stephen Roach (hereinafter "Lieutenant Roach"), about her designation as the suspect on the report. Sergeant Cordero and Lieutenant Roach informed Plaintiff that the designation and/or publication of the report would be changed per MPD's Deputy Chief of Information Technology Don Crowe (hereinafter "Chief Crowe"). At all

times relevant to this action Chief Crowe had the ability to change the designation and/or publication of this report and chose to never make a change to the designation and/or publication of the report.

25.  On or about July 16, 2018, Sergeant Cordero and Lieutenant Roach refused to take a domestic violence report from Plaintiff concerning the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018.

26.  In August 2018, the Twenty-Eighth District, District Attorney General was assigned to handle proceedings concerning the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018, wherein Plaintiff was still listed as the suspect.

27.  On or about November 15, 2018, Plaintiff informed DDA Lepone of the issues arising from MPD's investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018.

28.  On or about November 19, 2018, Plaintiff informed the Shelby County District Attorney Amy Weirich (hereinafter "DA Weirich") of the issues arising from MPD's investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018.

29.  On or about November 19, 2018, Plaintiff, at the direction of DDA Lepone and DA Weirich, spoke with Assistant District Attorney Jennifer McEwen (hereinafter "ADA McEwen") of the Twenty-Eighth District concerning the problems arising from MPD's investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018. Plaintiff discovered that ADA McEwen was in contact with Defendant Stark who was being considered a potential victim. Plaintiff discontinued further contact with ADA McEwen given the appearance of impropriety. Plaintiff immediately informed DDA Lepone of the situation. DDA Lepone agreed with Plaintiff's choice to cease communication with ADA McEwen under the circumstances.

30. On December 15, 2018, Plaintiff requested the SCDAG contact an outside agency to investigate wrongdoing by MPD concerning the investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018. Upon information and belief, Plaintiff's request for an outside investigation remains unanswered.

31. On February 3, 2019, Plaintiff made an official request to DDA Lepone for a Prosecutor Pro Tem to investigate police misconduct charges against MPD. Upon information and belief, Plaintiff's request for an outside investigation remains unanswered.

32. On January 7, 2019, Plaintiff contacted City of Memphis's Mayor Jim Strickland (hereinafter "Mayor Strickland") concerning her allegations of police misconduct concerning the investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018. Mayor Strickland's response indicated that he would provide the information to the Memphis City Attorney Bruce McMullen (hereinafter "Mr. McMullen").

33. Upon information and belief, on or after January 7, 2019, Mayor Strickland, or someone acting on his behalf, sent Plaintiff's January 7, 2019, letter to Mayor Strickland to Plaintiff's employer, the SCDAG.

34. On June 29, 2018, Plaintiff filed her Complaint for Absolute Divorce in the Circuit Court of Shelby County, Division VIII.

35. On November 28, 2018, Plaintiff amended her divorce complaint to include the tort of battery.

36. On January 3, 2019, Plaintiff filed deposition notices and caused subpoenas to be issued for Defendant Stark, Sergeant Cordero, and three other MPD officers involved in the investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018.

37. On January 23, 2019, the Memphis City Attorney's Office, by and through Mr. McMullen and Assistant Memphis City Attorney Zayid Saleem (hereinafter "Mr. Saleem"), filed a Motion to Quash requesting the court not only quash the subpoenas issued for deposition on January 25, 2019, but also prohibit Plaintiff from deposing any witnesses or investigators or reviewing any materials from the investigation into the events of June 17, 2018.

38. On or about January 25, 2019, Melissa C. Berry (hereinafter "Ms. Berry"), Defendant Stark's divorce counsel, informed Plaintiff that the Memphis City Attorney's Office intended to be present during Plaintiff's depositions of all police officers involved should Plaintiff be allowed to proceed with such depositions.

39. On December 14, 2018, Plaintiff posted on Facebook commentary concerning the propriety of law enforcement investigating cases where members of their own department may face criminal and/or civil liabilities referencing her own experiences with MPD's investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018.

40. Upon information and belief, on or about December 15, 2018, various members of MPD contacted DDA Lepone at the behest of Defendant Stark concerning Plaintiff's Facebook post and insisting that he utilize his position as her supervisor to compel her to remove the post. In response, DDA Lepone began insisting that Plaintiff remove the Facebook post and drop her allegations against Defendant Stark and the MPD about their botched investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018.

41. Plaintiff's Facebook Post concerning the propriety of law enforcement investigating cases where members of their own department may face criminal and/or civil liabilities referencing her own experiences with MPD's investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018, was a constitutionally protected activity involving protected

speech. The undue influence on Plaintiff's employer by various members of MPD was on behalf or at the behest of Defendant Stark with the goal of preventing Plaintiff from continuing to exercise her constitutionally protected rights.

42. On January 9, 2019, Ms. Berry substituted in as counsel for Defendant Stark in the divorce proceedings.

43. On January 15, 2019, Defendant Stark, through his counsel, filed a Petition for Restraining Order requesting that Plaintiff be required to remove her Facebook post dated December 14, 2018, and be enjoined from making future posts or oral comments which might jeopardize Defendant Stark's employment or impugn his reputation with MPD. This petition was premised on the potential of MPD retaliating against Defendant Stark due to Plaintiff's public allegations against the botched MPD investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018. However, on information and belief, Ms. Berry was at all relevant times in communication with the Memphis City Attorney's Office concerning the ligation of the petition. Additionally, Defendant Stark's petition was another adverse action taken by Defendant Stark with the endorsement of the City with the goal of preventing Plaintiff from continuing in a constitutionally protected activity, which caused Plaintiff injury.

44. On February 7, 2019, a hearing on Ms. Berry's Petition for Restraining Order was held before Judge Robert Weiss, Shelby County Circuit Court Judge for Division VIII with Attorney Michelle Crawford (hereinafter "Ms. Crawford") acting as counsel on behalf of Defendant Stark. Despite this proceeding having no bearing on the City's rights or obligations, counsel for the City attended the hearing, again, through its actions, endorsing the adverse actions that Defendant Stark was taking in response to Plaintiff's protected First Amendment activity.

45. Defendant Stark testified at the hearing that both MPD and Mayor Strickland were his employers and requested the Court enjoin Plaintiff from making any public statements about either himself or his employers.

46. During the hearing, Ms. Crawford argued that Plaintiff should be required to remove the Facebook post, in violation of her First Amendment rights, and enjoined from "making any disparaging remarks about Defendant Stark of MPD's alleged corruption in any public form, and social media or to anyone." Defendant Stark argued, through counsel, that MPD might retaliate against Defendant Stark due to Plaintiff's allegations against Defendant Stark and the MPD about their botched investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018.

47. On or about February 6, 2019, Plaintiff discovered that Defendant Stark had interfered with her ability to proceed with a first-degree murder prosecution by causing MPD Homicide Bureau Sergeant Burton to refuse to attend and testify at a hearing on a motion to suppress if Plaintiff was the prosecuting attorney. MPD was at all times aware of both Defendant Stark and Sergeant Burton's collusion. Additionally, this was another adverse action at the behest of Defendant Stark with the goal to prevent Plaintiff from continuing constitutionally protected activities and to cause a termination of the employment relationship between Plaintiff and SCDAG which caused Plaintiff injury.

48. On February 7, 2019, Judge Weiss ruled from the bench that Plaintiff was to have no communication with MPD or Defendant Strickland in an extraordinary violation Plaintiff's First Amendment right. Furthermore, Judge Weiss had Plaintiff placed into custody and held in handcuffs for approximately four (4) hours until she agreed to remove the Facebook post.

49. On or about February 7, 2019, MPD banned Plaintiff from police occupied property including the Tillman Precinct where Plaintiff was assigned. Per the MPD ban placed against Plaintiff, Plaintiff would only be allowed to obtain her personal property from her office at the Tillman Precinct under a police escort. This ban was in retaliation for Plaintiff's Facebook post criticizing the MPD and her repeated communications with various people about Defendant Stark's and the MPD's wrongful conduct. These communications were protected activities involving protected speech. Additionally, this was another adverse action on behalf or at the behest of Defendant Stark with the goal to prevent Plaintiff from continuing constitutionally protected activities and to cause a breach or termination of the employment relationship between Plaintiff and SCDAG which caused Plaintiff injury.

50. The February 7, 2019, ban was an official policy implemented on a citywide basis against Plaintiff specifically. This policy enacted in retaliation for Plaintiff's protected activities.

51. On or about February 8, 2019, Detective Frias, the sole remaining MPD Homicide Bureau witness available for Plaintiff to use in a homicide case to which Plaintiff was assigned became suddenly unavailable for the motion to suppress hearing set on February 13, 2019. Defendant Stark testified on February 7, 2019, that a single homicide detective had "liked" Plaintiff's Facebook post. Detective Frias was the sole MPD officer who reacted to Plaintiff's Facebook Post. In essence, another MPD officer, in a gross dereliction of his responsibility to the public, refused to assist in the prosecution of cases being prosecuted by Plaintiff with the goal to prevent Plaintiff from continuing constitutionally protected activities and to cause a breach or termination of the employment relationship between Plaintiff and SCDAG which caused Plaintiff injury. This was action was on behalf or at the behest of Defendant Stark.

52. On or about February 8, 2019, DDA Lepone summoned Plaintiff to his office and again attempted to persuade Plaintiff to drop her allegations against Defendant Stark and MPD.

53. On February 9, 2019, Plaintiff was forced to tender her thirty-day notice to SCDAG based on MPD's behavior creating a ethical conflict with Plaintiff's ability to perform her duties as an Assistant District Attorney. In effect, Defendants rendered it impossible for Plaintiff to ethically continue in her role as an Assistant District Attorney because of the knowledge that her mere involvement in a case would place valid prosecutions in jeopardy.

54. On or about February 13, 2019, DA Weirich accepted Plaintiff's resignation making it effective immediately.

55. On February 13, 2019, Judge Weiss entered an Order of Petition for Restraining Order requiring Plaintiff to remove the Facebook post and enjoined Plaintiff from "making any other public allegations against . . . Joe Stark on social media (on any platform) or to his employer which may affect . . . [Joe Stark's] reputation or employment." The order further erroneously held that both the Facebook Post and the letter to Mayor Strickland violated the generic Mandatory Mutual Injunctions issued with her Divorce Complaint on June 29, 2019.

56. On or about February 15, 2019, Plaintiff was contacted by the FBI regarding a complaint she had filed concerning official misconduct by MPD. At that time Plaintiff had not received notice of Judge Weiss's official rulings on the Petition for Restraining Order and could not meet them out of fear of additional contempt findings and incarceration.

57. On March 8, 2019, Ms. Berry filed a Motion to Amend Order of Petition for Restraining Order to Conform to Transcript in an effort to have said Restraining Order include Judge Weiss's ruling from the bench which enjoined Plaintiff from any contact with MPD or

Mayor Strickland and that Plaintiff was in contempt of court for having made the original Facebook Post.

Plaintiff has been unable to inform potential employers of MPD's behavior concerning the motion to suppress due to Judge Weiss's order on the Petition for Restraining Order and fear of additional contempt findings and incarceration.

58. As a direct and proximate result of the Defendants' unlawful actions, Plaintiff has suffered, *inter alia*, a deprivation of her constitutional rights, severe psychological and emotional trauma, and damage to her reputation and employment.

## CAUSES OF ACTION

### COUNT 1 – RETALIATION
### IN VIOLATION OF THE FIRST AMENDMENT
### (AGAINST DEFENDANT CITY OF MEMPHIS)
### (42 U.S.C. § 1983)

59. Plaintiff re-alleges paragraphs 1-58 of this Complaint as if set forth verbatim herein.

60. Defendant City of Memphis, through its policy makers, employees, agents, and/or officers, directly retaliated against Plaintiff by banning her from all MPD property, including the Tillman station where her office was located for voicing her criticism of MPD on social media concerning the propriety of law enforcement investigating cases where members of their own department may face criminal and/or civil liabilities referencing her own experiences with MPD's investigation of the domestic assault and abuse perpetrated by Defendant Stark on June 17, 2018.

61. This ban was an official policy that was implemented on a citywide basis against Plaintiff specifically. This policy was created in retaliation for Plaintiff's exercise of protected activities. A single decision properly attributable to a municipality may give rise to § 1983 liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

62. Plaintiff's Facebook post criticizing the MPD and her repeated communications with various people about Defendant Stark's and the MPD's wrongful conduct was political speech protected by the First Amendment.

63. The ban from all MPD property was a serious adverse action which was implemented the same day the state court enjoined Plaintiff from criticizing MPD indicating a strong causal link between the enjoinment and the ban.

64. As alleged above, Defendant City of Memphis acting under color of state law, violated the rights of Plaintiff secured by the First and Fourteenth Amendments to the U.S. Constitution.

65. Defendant City of Memphis lacked justification to violate the rights of Plaintiff secured by the First and Fourteenth Amendments. The reason for its property ban of Plaintiff was to retaliate against Plaintiff for the exercise of her First Amendment rights.

66. Defendant City of Memphis, through its policy makers, employees, agents, and/or officers acted with malice when they banned Plaintiff from Tillman Station in response to Plaintiff exercising her First Amendment rights.

67. In the alternative, Defendant City of Memphis, through its policy makers, employees, agents, and/or officers, acted with deliberate indifference to Plaintiff's constitutional rights when they banned Plaintiff from Tillman Station in response to Plaintiff exercising her First Amendment rights.

68. Defendant City of Memphis' actions therefore violated Plaintiff's clearly established First and Fourteenth Amendment rights.

69. Plaintiff suffered injuries, including, but not limited to, violations of her constitutional rights, humiliation, emotional distress, and constructive discharge as a direct and proximate cause of Defendant City of Memphis' unlawful actions.

### COUNT 2 – RETALIATION
### IN VIOLATION OF THE FIRST AMENDMENT
### (AGAINST DEFENDANT STARK)
### (42 U.S.C. § 1983)

70. Plaintiff re-alleges paragraphs 1-58 of this Complaint as if set forth verbatim herein.

71. Defendant Stark induced City of Memphis homicide detectives to refuse to testify in criminal homicide proceedings handled by Plaintiff in retaliation for Plaintiff's Facebook post criticizing the MPD and Plaintiff's repeated communications with various people about Defendant Stark's and the MPD's wrongful conduct.

72. Plaintiff's Facebook post criticizing the MPD and her repeated communications with various people about Defendant Stark's and the MPD's wrongful conduct was political speech protected by the First Amendment.

73. Defendant Stark's deliberate sabotage of Plaintiff's homicide prohibited Plaintiff from effectively handling cases as a prosecutor. Defendant Stark's action directly resulted in a constructive discharge of Plaintiff as she was rendered unable to efficiently conduct her job.

74. As alleged above, Defendant Stark acting under color of state law, violated the rights of Plaintiff secured by the First and Fourteenth Amendments to the U.S. Constitution.

75. Defendant Stark lacked justification to violate the rights of Plaintiff secured by the First and Fourteenth Amendments. The reason for Defendant Stark's deliberate sabotage of Plaintiff's ability to conduct her role as a prosecutor was to retaliate against Plaintiff for the exercise of her First Amendment rights.

76. Defendant Stark deliberately sabotaged Plaintiff's ability to conduct her role as a prosecutor with the intent to cause Plaintiff to cease posting or making factual statements regarding the investigation, and to cause Plaintiff to constructively lose her ability to maintain her role as a prosecutor in response to Plaintiff exercising his First Amendment rights.

77. Defendant Stark acted with malice when he targeted Plaintiff unlawfully and unnecessarily in response to Plaintiff exercising her First Amendment rights.

78. In the alternative, Defendant Stark acted with deliberate indifference when he targeted Plaintiff unlawfully and unnecessarily in response to Plaintiff exercising her First Amendment rights.

79. Defendant Stark's actions therefore violated Plaintiff's clearly established First and Fourteenth Amendment rights, and Defendant Stark is not qualifiedly immune from suit. Plaintiff suffered injuries, including, but not limited to, violations of her constitutional rights, humiliation, emotional distress, and constructive discharge as a direct and proximate cause of Defendant Stark's unlawful actions.

### COUNT 3 – INTERFERENCE WITH BUSINESS RELATIONS
### (AGAINST DEFENDANT STARK)

80. Plaintiff re-alleges paragraphs 1-58, as if set forth in full herein.

81. Plaintiff had an established business relationship by means of employment as an Assistant District Attorney with the Shelby County District Attorney General's Office.

82. It is clearly established that "Tennessee recognizes a cause of action for tortious interference with another person's an at-will employment." *Aldridge v. City of Memphis*, 404 F. App'x 29, 43 (6th Cir. 2010).

83. Defendant Stark was at all times aware of Plaintiff's employment as an Assistant District Attorney with the Shelby County District Attorney General's Office.

84. The conduct of Defendant Stark as described above was designed to cause a breach or termination of Plaintiff and the Shelby County District Attorney General's Office's business relationship.

85. Both Defendant Stark's motives and actions in attempted to cause a breach or termination of Plaintiff and the Shelby County District Attorney General's Office's business relationship were improper.

86. Plaintiff's voluntary resignation does not preclude Plaintiff from bringing her claim for interference with business relationships claim as discharge is not an element of the claim. Furthermore, a broad array of conduct may give rise to an intentional interference with business relations claim, including the retaliatory conduct described here within. *See Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994).

### COUNT 4 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST DEFENDANT STARK)

87. Plaintiff re-alleges paragraphs 1-58, as if set forth in full herein.

88. Defendant Stark was at all times aware of Plaintiff's employment as an Assistant District Attorney with the Shelby County District Attorney General's Office.

89. Defendant Stark was at all times aware Plaintiff prosecuted homicide cases on behalf of the government and at the benefit of citizens of Shelby County, Tennessee.

90. Defendant Stark intentionally persuaded two MPD homicide detectives to refuse to testify at a key hearing in a murder case that Plaintiff was handling.

91. In the alternative, Defendant Stark acted recklessly when he persuaded two MPD homicide detectives to refuse to testify at a key hearing in a murder case that Plaintiff was handling.

92. Defendant Stark's goal in doing so was to punish Plaintiff for reporting his physical abuse.

93. Defendant Stark's abuse of his position of trust in such an outrageous example of abuse of the public trust would shock the conscious of every citizen of Shelby County.

94. Plaintiff suffered injuries, including, but not limited to, economic damages, humiliation and sever emotional distress as a direct and proximate cause of Defendant Stark's intentional or reckless actions.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each Count of the Complaint and prays for the following relief:

1. Permit Plaintiff leave to amend this Complaint after reasonable discovery;
2. Empanel a jury to try this matter;
3. Award Plaintiff compensatory damages
4. Award Plaintiff punitive damages against Defendant Stark;
5. Award Plaintiff her reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;
6. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;
7. Award pre-and post-judgment interest pursuant to TENN. CODE ANN. § 47-14-123 in an amount according to the proof at trial; and
8. Grant the Plaintiff such further relief as the Court may deem just and proper.

[Signature on following page]

Respectfully submitted,

/s/ *Craig A. Edgington*
Craig A. Edgington (#38205)
Brice M. Timmons (#29582)
Bryce W. Ashby (#26179)
DONATI LAW, PLLC
1545 Union Avenue
Memphis, TN 38104
(901) 278-1004 (Office)
(901) 278-3111 (Fax)
craig@donatilaw.com
brice@donatilaw.com
bryce@donatilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing.

/s/ *Craig A. Edgington*